[690 NYS2d 663]

In the Matter of PHILIP W. ROGERS, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE SECOND AND ELEVENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, May 24, 1999

## APPEARANCES OF COUNSEL

*Robert H. Straus,* Brooklyn, for petitioner.

*Edward F. Hayes III,* Northport, for respondent.

**OPINION OF THE COURT**

Per Curiam.

The respondent was served with a petition that contained four charges of professional misconduct against him. In his answer, the respondent admitted most of the factual allegations contained in the petition, but denied that he was guilty of professional misconduct. After a hearing, the Special Referee sustained all of the charges against the respondent. The Grievance Committee now moves to confirm the Special Referee's report. The respondent opposes the Grievance Committee's motion.

All of the charges against the respondent are based on the following factual allegations:

1. In or about April 1992, the respondent, together with John Smythe and Dr. Kadandale Ravindranath Shetty, formed Showtime Entertainment Inc., a New York corporation.

2. The respondent and Mr. Smythe were each issued 40% of Showtime's stock. Dr. Shetty received the remaining 20%.

3. In or about August 1993, Showtime set up and began operating Maxine's, a nightclub and restaurant located in Melville, New York.

4. The space occupied by Maxine's was rented from Dr. Shetty's wife, Veena R. Shetty, doing business as VRS Entertainment.

5. Maxine's failed to generate sufficient revenues to pay its operating expenses, including the rent owed to VRS.

6. In or about August 1994, after VRS instituted eviction proceedings against Showtime for nonpayment of rent, Showtime filed a petition for reorganization pursuant to chapter 11 of the Bankruptcy Code (11 USC).

7. In or about August 1994, the respondent entered into discussions with Dr. Kenneth Mattucci in an effort to obtain an infusion of funds for Showtime's operations.

8. Dr. Mattucci expressed an interest in purchasing a partial ownership in Showtime for his son, Richard Mattucci, and in having Richard serve in a managerial position at Maxine's.

9. As a result of the negotiations, a general agreement was reached that the Mattuccis would pay Showtime $250,000 in exchange for one third of Showtime's issued shares of stock and a managerial position for Richard Mattucci.

10. Pursuant to the general agreement, the respondent prepared a letter agreement.

11. On or about November 28, 1994, the letter agreement was executed by the respondent, John Smythe, and Richard Mattucci. It expressly provided that a good-faith payment of $150,000 was being tendered on behalf of Mr. Mattucci subject to a written contract between the parties and the approval of the New York State Liquor Authority.

12. The letter agreement provided for a refund of the $150,000 within 30 days if a contract was not signed or if the Liquor Authority denied a license.

13. On or about December 1, 1994, pursuant to the respondent's instructions, a certified check in the amount of $150,000 signed by Dr. Mattucci's wife was made payable to the respondent's law firm, Rogers, LaVelle, and Dapelo, as attorneys, and delivered to the respondent.

14. The check was deposited into the firm's attorney trust account the same day.

15. Without the knowledge or consent of the Mattuccis or Smythe, the respondent entered into an agreement with Dr. Shetty and his attorneys, Pryor and Mandelup, P.C, to purchase Dr. Shetty's shares of Showtime in the respondent's own name and to satisfy the rent arrears.

16. In order to effectuate his plan, the respondent intended to use the $150,000 on deposit in his law firm's attorney trust account.

17. On or about December 2, 1994, the respondent had his law partner William T. LaVelle issue a certified check from the firm's attorney trust account in the amount of $150,000 to Pryor and Mandelup, P. C., as attorneys.

18. On or about December 5, 1994, in exchange for the aforementioned certified check, Dr. Shetty transferred to the respondent his entire interest in Showtime and settled VRS's claim for rent arrears.

19. The respondent did not disclose to the Mattuccis or Smythe that he used the $150,000 escrow deposit to purchase Dr. Shetty's shares of Showtime in his own name.

20. In or about December 1994, the Mattuccis, unaware that the $150,000 deposit had been depleted, retained an attorney named Steven Cohn to represent them in negotiating a written contract with Showtime.

21. The respondent was informed of Mr. Cohn's representation and had discussions with him about the terms of the contract.

22. Without Mr. Cohn's consent, the respondent communicated directly with Dr. Mattucci concerning the terms of the contract that was being negotiated.

23. Without Mr. Cohn's consent, the respondent communicated directly with Richard Mattucci concerning the terms of the contract that was being negotiated.

24. No written contract between the Mattuccis and Showtime was ever executed.

25. By a decision and order of the Appellate Division, Second Judicial Department, dated August 5, 1996 (230 AD2d 725), the respondent was directed to return the $150,000 deposited into his firm's attorney trust account pursuant to the letter agreement.

26. The respondent has failed to return the deposit.

Charge One alleged that, based on factual allegations 1 through 19 and 24 through 26, the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]).

Charge Two alleged that, based on factual allegations 1 through 22, the respondent impermissibly communicated with one of adverse interest, in violation of Code of Professional Responsibility DR 7-104 (A) (1) (22 NYCRR 1200.35 [a] [1]).

Charge Three alleged that based on factual allegations 1 through 21 and 23, the respondent impermissibly communicated with one of adverse interest, in violation of Code of Professional Responsibility DR 7-104 (A) (1) (22 NYCRR 1200.35 [a] [1]).

Charge Four alleged that, based on all of the foregoing factual allegations, the respondent engaged in conduct that adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

In view of the respondent's admissions and the evidence produced by the petitioner at the hearing, all of the charges of professional misconduct against the respondent were properly sustained by the Special Referee.

In determining the appropriate measure of discipline to impose, the respondent asks the Court to consider the character letters submitted on his behalf. He also asks the Court to consider that he did not profit from the transaction underlying the charges against him and that nothing in the Special Referee's findings demonstrates that he is unfit to practice law.

The respondent's prior disciplinary history consists of a 1985 letter of caution for failing to register as an attorney for the 1982-1984 registration period.

In view of the serious nature of the respondent's misconduct, his failure to acknowledge his wrongdoing, and his lack of any remorse, the respondent is disbarred.

MANGANO, P. J., BRACKEN, O'BRIEN, SANTUCCI and SULLIVAN, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Philip W. Rogers, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that Philip W. Rogers shall comply with this Court's rules governing the conduct of disbarred, suspended and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that, pursuant to Judiciary Law § 90, Philip W. Rogers is commanded to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.