[742 NYS2d 49]

In the Matter of CHICO F. GIBBONS, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, May 14, 2002

**APPEARANCES OF COUNSEL**

*Jorge Dopico* of counsel (*Thomas J. Cahill*, attorney), for petitioner.

No appearance for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Chico F. Gibbons was admitted to the practice of law in the State of New York by the Second Judicial Depart-

ment on February 27, 1985. At all times pertinent to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

Respondent was served with a notice and statement of charges dated January 25, 2001 in which it was alleged that he violated Code of Professional Responsibility and DR 1-102 (a) (4) and DR 9-102 (a), (c) (1), (3), (4) and (d) (22 NYCRR 1200.3, 1200.46) by intentionally converting client funds, misappropriating client funds, failing to inform his client that he received funds, failing to return promptly client funds as requested by the client, and failing to keep appropriate book-keeping records for his escrow account. Respondent filed an answer to the charges in which he admitted most of the factual allegations, including the conversion of $75,000 of his client's money, but denied violating any Disciplinary Rule.

The parties entered into a prehearing stipulation dated February 27, 2001, stating that if witnesses were called at the hearing, they would testify as provided in the statement of charges and that the Disciplinary Committee's exhibits would be admitted into evidence without objection. On March 2, 2001 and April 10, 2001, a Referee conducted a hearing, at which respondent was represented by counsel. The Committee recommended disbarment, and respondent requested a two-year suspension based upon his financial, marital and psychiatric difficulties. In a report dated May 31, 2001, the Referee recommended disbarment.

A Hearing Panel heard oral argument on July 19, 2001 and, by a majority report, three Panel members recommended a two-year suspension and, by a dissent, one member recommended disbarment.

The Referee found that petitioner had proved all the charges against respondent. In 1996, respondent was retained to finalize the sale of a half interest in a corporation to the other half owner. In conjunction with this sale, respondent received a $75,000 check as payment for his client's shares. Although respondent deposited the funds in his firm's escrow account in January 1997, he never notified his client about receiving the check and did not send him the money until after a complaint was filed with the Disciplinary Committee in March 1999.

During 1997 and 1998, without his client's knowledge or consent, respondent converted almost the entire $75,000, in various portions at different times, to pay personal and business expenses by issuing many checks to himself or third par-

ties for his own benefit. Some of these checks were written to compensate marshals for performing evictions, to pay for the firm's liability insurance, and to cover personal and business rent. By December 8, 1998, respondent had depleted the account, leaving a balance of about $1,200.

In early 1999, respondent's client retained a new attorney to liquidate his interest in the corporation as he was unaware of the 1996 settlement and respondent's receipt of the check for $75,000. The attorney repeatedly called respondent to ask about the matter but received no response. Finally, in late March 1999, a complaint was filed with the Committee. On or about May 19, 1999, respondent sent his client a $75,000 check from his escrow account, which was returned for insufficient funds. Although a certified check drawn on respondent's firm's escrow account was successfully negotiated on or about June 30, 1999, respondent did not send his client any interest generated on the deposited funds.

In response to the Committee's several requests and a subpoena dated November 3, 1999, respondent belatedly produced his bank statements and canceled checks. He did not produce any bookkeeping records for his special account indicating the amounts of deposits or withdrawals or the identity of the persons for whom he held funds or to whom he disbursed funds.

Specifically, the Referee found that, by concealing the funds he received on behalf of his client and misappropriating them for his own use, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102 (a) (4), the most serious charge. Noting that courts have held that "venal intent" is a necessary element of a violation of DR 1-102 (a) (4) (*Matter of Altomerianos*, 160 AD2d 96, 101), the Referee concluded:

> "It is quite clear that respondent depleted his client's funds with venal intent. He used the money for the better part of two years, and had not the client 'remembered' the matter, he still would not have returned the funds. The fact that respondent was not proficient in the practice of bookkeeping is no excuse for his behavior. A lawyer is expected to act as a fiduciary when securing funds. I find respondent's actions unacceptable."

The Referee further concluded that respondent's admission that he left the money from the sale of the corporation in his

disbursement account, never transferring it back to the escrow subaccount, constituted a violation of DR 9-102 (a), which prohibits a lawyer in possession of client funds from commingling those funds with his own personal or business funds. Although the Referee noted that respondent did in fact repay the money (without interest), his misconduct was "as grave a violation of the rule as one can possibly fathom." The Referee also concluded that respondent violated DR 9-102 (c) (1) by failing to promptly notify his client of the receipt of funds that belonged to him. The Referee noted that respondent offered no evidence except for his own testimony that he did notify his client, which assertion was "belied by the fact that his client went out and hired another attorney to try and sell his share of the corporation." By neglecting to maintain a separate ledger book for his escrow account, respondent violated DR 9-102 (c) (3) by failing to keep records of all client funds. Respondent further violated DR 9-102 (c) (4) by failing to promptly return client funds as requested. By failing to keep a separate ledger book for his escrow account, respondent also failed to maintain accurate and contemporaneous records showing, among other things, the source of all funds deposited in his escrow account, the names of all persons for whom the funds were held, the amount of such funds, and the names of all persons to whom such funds were disbursed, in violation of DR 9-102 (d).

Respondent attributed his lack of judgment to a number of mitigating factors, including his strained relationship with his former law partner and the fact that, during this time, he was emotionally and financially affected by a marital separation. Respondent sought a two-year suspension, arguing that he did not convert the funds with venal intent but due to psychiatric problems, as extensive mitigating evidence suggests. The Referee, however, while noting the authenticity of respondent's financial, marital and psychiatric problems, nevertheless concluded that they are insufficient to excuse his actions.

The majority of the Hearing Panel recommended a two-year suspension. The majority believed that the Referee failed to give adequate consideration to the mitigating circumstances and that his report failed to establish the requisite venal intent. The majority found that respondent's misconduct was aberrational in nature, that case precedents do not support disbarment, and that a two-year suspension would create "substantial hardship" for respondent and is therefore sufficiently severe to deter others from similar misconduct. They also found a causal relationship between the conversion of funds and respondent's

depression, agreeing with the assessment of respondent's psychiatrist that respondent would not be in this legal predicament had he not been severely depressed.

In a dissent, the Chair of the Panel voted for disbarment, noting that: "venality is found not only in the initial act of converting the funds, despite a claimed state of depression, but in the further act of keeping such stolen or converted funds for approximately 2½ years, until charges by this Committee were brought."

The Departmental Disciplinary Committee is now seeking an order pursuant to 22 NYCRR 603.4 (d) and 605.15 (e), determining the findings of fact and conclusions of law and imposing whatever sanction this Court deems just and appropriate.

We reject the Panel majority's conclusion that there was a causal connection between this respondent's "severe depression" and his conversion of client funds and, therefore, that there was a lack of intent to defraud or deceive (see Matter of Mulrow, 241 AD2d 7; Matter of Messina, 180 AD2d 370). While respondent's psychiatrist, unlike the psychiatrist in Messina, opined that respondent's judgment was negatively affected by his illness, there was never any claim that respondent was unaware of what he was doing. Indeed, respondent knew what he did was wrong since he confided to the doctor that he had "violated one of the most important rules of his profession, that being to [sic] not invade or commingle funds, no matter how grave a situation an attorney is in." Moreover, respondent never offered a specific explanation of how his psychiatric, personal and financial circumstances caused him to commit the offenses charged. Consequently, we find that venality was established by respondent's knowing withdrawal of his client's funds, without consent or authority.

Furthermore, as the Panel Chairman maintained, respondent's continued retention and use of the funds for 2½ years after the conversion, until a complaint was finally filed with the Disciplinary Committee in March 1999, also demonstrates venality and constitutes a violation of DR 1-102 (a) (4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation). Moreover, respondent's intentional conversion was not, arguably, the only dishonest conduct in which he engaged. Respondent also failed to inform his client that he received the funds and failed to pay the funds promptly when requested, thereby violating DR 1-102 (a) (4). Finally, respondent's mitigating circumstances are not so extreme or so unusual as to warrant a lesser sanction than disbarment.

Accordingly, the Committee's motion should be granted to the extent of confirming the findings and conclusions of the Referee and the recommendation of disbarment and striking respondent's name from the roll of attorneys and counselors at law, effective immediately.

MAZZARELLI, J.P., ELLERIN, LERNER, RUBIN and MARLOW, JJ., concur.

Respondent's name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof, as indicated.