[849 NYS2d 560]

In the Matter of LEAH LARSEN, an Attorney, Respondent. DE-
PARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDI-
CIAL DEPARTMENT, Petitioner.

First Department, January 31, 2008

## APPEARANCES OF COUNSEL

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Jeremy S. Garber* of counsel), for petitioner.

*Hinshaw & Culbertson LLP* (*Hal R. Lieberman* and *Schuyler B. Kraus* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Leah Larsen was admitted to the practice of law in the State of New York by the First Judicial Department on February 27, 1978 and, at all times relevant herein, has maintained an office for the practice of law within the First Department.

The Departmental Disciplinary Committee (the Committee) served respondent with a notice and statement of charges setting forth 35 counts of professional misconduct arising out of her representation of the husband in a contested matrimonial action. Respondent, in an unverified answer, denied all of the charges. Separate hearings were held as to liability and sanctions before a Referee, after which the Referee sustained 22 of the 35 charges and recommended that respondent be suspended for 18 months and make restitution to her client in the amount of $30,464. After oral argument, a Hearing Panel, by a four-to-one majority, affirmed the 22 charges sustained by the Referee, sustained four additional charges that had been dismissed by the Referee, and increased the recommended sanction to 2½ years in addition to the restitution ordered by the Referee.

Respondent was charged with five separate violations of the Disciplinary Code (charges 1, 2, 4, 5 and 6) related to the circumstances surrounding her retention by the husband/client. The Referee and Hearing Panel did not sustain charges 1 or 4 through 6 because the signature on the retention agreement appeared to be that of respondent's client. Charge 2, however, which asserted that respondent failed to provide her client with a statement of client's rights and responsibilities, in violation of Code of Professional Responsibility DR 2-106 (f) (22 NYCRR 1200.11), was sustained, as respondent admitted that there was no proof that she had done so.

Charges 7 through 17 assert that respondent, on a number of occasions, either improperly notarized her client's signature, or signed her client's name, with the client's consent, notarized that signature, and then submitted the documents to Supreme Court, Dutchess County. Although respondent acknowledged that she notarized her client's signature without his presence, she explained that she did not intend to mislead the court. The Referee declined to sustain four of the charges because respondent had obtained her client's permission prior to notarizing each signature and, therefore, found that her conduct did not involve dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102 (a) (4) (22 NYCRR 1200.3). The Hearing Panel, however, correctly sustained those charges, as false signatures and false notarizations constitute violations of DR 1-102 (a) (4), even if done with the consent of the client (see Matter of Fauci, 28 AD3d 192 [2006]; Matter of Lazroe, 25 AD3d 263 [2005]).

Charges 18 through 26 relate to respondent's failure to disburse escrow funds, which consisted of proceeds from the sale of the marital house, in accordance with court orders issued in the underlying matrimonial action. Supreme Court had ordered that $38,933 was to be used to pay the couple's credit card debt, with the remainder of the funds, $44,347, to be used to pay respondent's client's retirement plan. Supreme Court restated its order after a motion for reargument. Charges 18 through 21 pertain to respondent paying $42,530.88 toward the marital credit card debt, which exceeded the amount ordered by the court by $3,597.88. The Referee and Hearing Panel, however, both found no liability because respondent had permission from her client to pay the larger sum, and the departure from the court order did not benefit her in any way.

Charges 22 through 26 arise out of respondent's advice to her client that it was permissible for her to disregard the court's ruling concerning the repayment of the retirement account and, instead, use those funds to pay her legal fees. The Referee and the Hearing Panel sustained the charges, with the Hearing Panel pointing out that the court's order used mandatory language that could not be ignored and that while respondent maintained that she could have imposed a lien on the escrow account and commenced arbitration for payment of her fees, she failed to follow the procedures and safeguards set out to sustain such an action. Moreover, the Hearing Panel further opined that it was "highly unlikely" that respondent would have prevailed in an arbitration, given that she had failed to provide

her client with itemized bills during the course of the proceeding; there was no document evidencing an agreement between respondent and her client concerning attorneys' fees; and the record reflected a bitter dispute between respondent and her client regarding her fees.

Charges 3 and 27 through 31 assert that respondent failed to send regular itemized bills during the course of her representation; sent a single, nonitemized, excessive bill after the close of the case; and pressured her client to withdraw a complaint he had made to the court about her fees. Since respondent conceded that she had never sent her client a bill during the $1^1/_2$ year divorce proceeding, respondent's conduct was found in violation of DR 1-102 (a) (5) (charge 3).

Charges 27 and 28 concern respondent's forwarding of a one-page, nonitemized bill for $168,400 in legal services, a fee more than eight times greater than that requested by the wife's attorney, which was unsubstantiated by time records or periodic bills. Respondent's client had originally proposed that respondent keep the remainder of the escrow funds, $40,964, as legal fees, provided that she forward $10,500 of the funds in order to repay a loan, and pay court-ordered fees to his wife's attorney. Respondent refused, stating it was insufficient and, in response to her client's request for a bill, sent the one-page, nonitemized bill for $168,400, claiming 842 hours of work at $200 per hour.

The wife's attorney eventually filed a motion seeking a judgment against respondent's client for failure to pay legal fees, in response to which the client forwarded a letter to the court which, inter alia, questioned his fee arrangement with respondent, and expressed his astonishment at the amount of the bill. The Committee contends that respondent, after reviewing the letter, telephoned her client and threatened to seek the full amount of the bill at arbitration unless he retracted the letter. The client then wrote a second letter to the court stating he wished to rescind the letter and "absolve" respondent, but the court attorney for the judge presiding over the divorce proceeding forwarded the matter to the Committee, commenting that respondent's fees appeared "grossly exorbitant in light of the circumstances of the case, the income and assets of the parties involved, and the ultimate result."

As a result, the Referee and the Hearing Panel sustained: charge 27, which asserted that respondent charged an illegal or excessive fee, in violation of DR 2-106 (a); charge 28, that such conduct adversely reflected on her fitness as a lawyer, in viola-

tion of DR 1-102 (a) (7); charge 29, which alleged that respondent's conduct would serve merely to harass or maliciously injure her client, in violation of DR 7-102 (a) (1) (22 NYCRR 1200.33); charge 30, which asserted that respondent's conduct in pressuring her client to withdraw his complaint was prejudicial to the administration of justice, in violation of DR 1-102 (a) (5); and charge 31, which conduct adversely reflected on her fitness as a lawyer, in violation of DR 1-102 (a) (7). In reaching his conclusion, the Referee credited respondent's client's testimony, finding the proof "overwhelming" that respondent had pressured the client into withdrawing the complaint, and discrediting respondent's testimony that the client had already decided to withdraw the complaint.

Charge 32 asserted that respondent's checking account was not identified as a client account, in violation of DR 9-102 (b) (2) (22 NYCRR 1200.46). Respondent contended that the bank improperly identified the account, and produced a letter from the bank supporting her argument. Accordingly, the Referee did not sustain this charge, the Committee did not seek reversal of that finding, and the Hearing Panel affirmed on the record.

Charges 33 and 34 allege that respondent failed to maintain complete and full records of her attorney accounts, in violation of DR 9-102 (d) (1) and (8), and failed to produce those records to the Committee as part of its investigation, in violation of DR 9-102 (i) and (j). Respondent faulted her inability to produce the records on a flood at the house where her files were stored, but the Referee concluded that sloppy bookkeeping, even if unintentional, was no excuse for her failure to properly maintain records. The Hearing Panel agreed.

Charge 35 asserted that respondent, in violation of DR 9-102 (a) and (b) (1), utilized escrow accounts opened exclusively for her client's funds for other banking purposes. Respondent conceded that after paying the credit card debt as ordered by Supreme Court, she used the remainder of the funds for her own purposes, believing she had the authority to do so because they were her legal fees. The Referee opined that respondent should have realized that her conduct was not only improper, but could be deemed a conversion of funds, and the Hearing Panel, in sustaining the charge, agreed that respondent misappropriated or commingled funds held in a client account and failed to maintain client accounts separate from her own personal and business account.

Respondent, in mitigation, testified on her own behalf and produced four character witnesses who testified about her

personal integrity and her excellent reputation in the legal community. The Referee found respondent "accepted responsibility for her actions and appears to be remorseful with respect to the charge[s] sustained."

The Committee has submitted the entire record and now moves for an order, pursuant to 22 NYCRR 605.15 (e) (1), sustaining the charges and imposing such sanction as this Court deems just and appropriate. The Committee contends, among other things, that: respondent's actions to gain control of the escrow funds were calculated and premeditated; she flagrantly violated the matrimonial rules and forwarded the exorbitant bill to the client in retaliation for questioning her fees; she intimidated and harassed her client by telling him she could prove her work at arbitration, knowing that assertion was false in light of the fact that she had no records to substantiate her work; and she never accepted responsibility for the most serious misconduct, including the willful disregard of court orders, the excessive legal fee, and her continued belief that she had a right to claim the remaining escrow funds.

Respondent requests this Court affirm the Referee's findings on liability and restitution, disaffirm the additional misconduct found by the Hearing Panel, and impose public censure or, at most, a three-month suspension as a sanction. Respondent notes that she is a sole practitioner with no disciplinary history over a 28-year career, who admittedly made uncharacteristic errors in judgment. Respondent further maintains that she has expressed remorse and responsibility for her misconduct, and has already returned $10,500 to her client. The Committee, in reply, argued that respondent presents no new evidence of remorse or acceptance of her misconduct, and "continues to minimize her surreptitious scheming to circumvent a Court order for her own financial benefit as merely an uncharacteristic error in judgment."

In view of the foregoing, we confirm the findings of fact and conclusions of law of the Hearing Panel, as they are fully supported by the record and, in most cases, admitted to by respondent. We note again that the Hearing Panel was correct in finding that respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (a) (4), when she signed her client's signature and then notarized those signatures as if they were genuine before filing them with the court, as well as when she notarized her client's signature when he did not appear before her.

With regard to sanction, we note that the breadth of respondent's misconduct is troubling, for at almost every turn throughout the matrimonial matter, respondent committed some form of misconduct, whether it be false notarizations, disregard of a court order, charging an exorbitant fee, threatening her client to pursue that fee, or using client funds that were in dispute. In light of this, we conclude that respondent should be suspended from the practice of law for a period of 2½ years (*see generally Matter of Charles*, 258 AD2d 60 [1999]; *Matter of Morrissey*, 217 AD2d 74 [1995]), and she is directed to make restitution to her client in the amount of $30,464.

We disagree with the dissent with regard to the severity of the sanction to be imposed, and in that vein, note the mitigating factors present, including respondent's 28-year legal career, which was previously unblemished by any disciplinary history, and the fact that she is 68 years old, suffering from a variety of ailments, and is the sole means of support for her divorced daughter and grandson. We also take into account the Referee's finding that respondent has accepted responsibility for her actions and is remorseful. More importantly, and as the dissent also notes, the Committee "did not characterize" respondent's conduct as conversion; indeed, while the Referee's report states that respondent's actions "could be deemed a conversion of funds," no finding of conversion, or venality, was made, a fact apparently not lost on the Referee, or the Hearing Panel, when their recommendations for sanctions were made. Given the totality of the circumstances presented and the absence of an opportunity to contest the allegation of intentional conversion, we disagree with the dissent's recommendation of disbarment (*see Matter of Zalk*, 45 AD3d 42, 49-50 [2007], *lv granted* 9 NY3d 958 [2007]; *Matter of Fong*, 308 AD2d 19, 21 [2003]).

Accordingly, the Committee's petition should be granted to the extent that the Hearing Panel's findings of fact and conclusions of law confirmed, and respondent suspended from the practice of law for 2½ years and directed to pay restitution to her client in the amount of $30,464.

McGUIRE, J. (dissenting). In my view, no penalty short of disbarment is appropriate in this matter. Accordingly, I respectfully dissent.

Respondent was retained to represent Conrad Tebbetts, Sr., in a matrimonial action between Mr. Tebbetts and his then-wife. The matrimonial action was commenced in Supreme

Court, Dutchess County. By an order, dated October 18, 2000, the court presiding over the matrimonial action determined that $38,933 of the Tebbetts' credit-card debt was to be satisfied with proceeds from the sale of their marital residence; any credit-card debt in excess of that amount was Mr. Tebbetts' responsibility. The court also determined that the remaining proceeds from the sale of the marital home were to be used to reimburse Mr. Tebbetts' 401(k) plan, from which he borrowed $50,000 to purchase the residence. The court required Mr. Tebbetts to pay his ex-wife's attorney's fees, $6,000, at a rate of $500 per month.

In a subsequent decision issued in December 2000 determining the ex-wife's motion to reargue the October 18, 2000 order, the court reiterated its directives and ordered the ex-wife's attorney to release to respondent the proceeds of the sale of the marital residence, $83,280, which the attorney had been holding in an escrow account. The court stated that $38,933 of the proceeds were to be used to pay the credit-card debt and the balance of the proceeds, approximately $44,000, was to be given to Mr. Tebbetts to deposit into his 401(k) account. Notably, in her papers in opposition to the motion and in support of a cross motion, respondent specifically asked the court to require the ex-wife's attorney to release to respondent the funds he was holding so that Mr. Tebbetts could reimburse his 401(k) plan. A judgment of divorce ordering the equitable distribution of the marital assets as set forth in the December 2000 order was signed by Supreme Court in January 2001.

Sometime after the October 18, 2000 order was issued, respondent spoke to Mr. Tebbetts regarding the court's order. Respondent advised Mr. Tebbetts that, contrary to the directives of the order, he was not required to use part of the proceeds from the sale of the marital residence to reimburse his 401(k) plan; rather, he could use the money to pay other expenses. Furthermore, respondent suggested to Mr. Tebbetts that he could use those funds to pay the legal fees he owed to her.

Following the court's order disposing of the motion to reargue, the ex-wife's attorney sent to respondent a check for the $83,280 that the attorney had held in escrow. On December 11, 2000, respondent deposited the funds into an escrow account she opened for the purpose of holding Mr. Tebbetts' funds. One week after she deposited the funds into the newly-opened escrow account, respondent transferred $43,293.03 from the escrow account to a checking account in her name. Respondent then paid $42,530.88

of the Tebbetts' credit-card debt with money from the checking account.

Respondent never turned over to Mr. Tebbetts the approximately $41,000 remaining in the accounts. Instead, respondent kept the money in the accounts, making periodic withdrawals over the next three years for her own personal use, including an $8,000 loan to her son-in-law. Ultimately, on September 29, 2003, respondent withdrew the remaining $12,579 from the accounts.[1]

In January 2001, Mr. Tebbetts spoke on the telephone with respondent regarding her contention that the funds remaining after the payment of the marital credit-card debt could be used to pay respondent's fees. Mr. Tebbetts proposed that respondent keep the remaining funds in satisfaction of her legal fees, provided she sent him $10,500 of the funds to pay his ex-wife's attorney's fees and repay a loan Mr. Tebbetts had taken from his employer to pay respondent's past fees. Respondent refused this offer, informing Mr. Tebbetts that the approximately $30,500 that would go to her under his proposal would not be sufficient to cover her fees. Mr. Tebbetts then requested that respondent provide him with a bill itemizing the legal work she performed in the matrimonial action. Shortly thereafter, respondent sent Mr. Tebbetts a bill, dated February 2, 2001, indicating that her fee was $168,400 with an outstanding balance of $138,900; the bill was not itemized and indicated only that respondent had worked 842 hours on the matrimonial action at a rate of $200 per hour.

In May 2001, after Mr. Tebbetts fell behind in paying the $500 per month installments to his ex-wife's attorney, the attorney made a motion seeking a judgment against Mr. Tebbetts for the unpaid installments. Mr. Tebbetts responded by sending a letter, dated June 6, to the court questioning his fee arrangement with respondent, and noting his astonishment with the amount of respondent's bill. Mr. Tebbetts sent a copy of this letter to respondent. After receiving this letter, respondent telephoned Mr. Tebbetts. Respondent told Mr. Tebbetts that if he did not retract his letter and withdraw his complaint with

---

**1.** Also on that date, respondent obtained a bank check in the name of Mr. Tebbetts in the amount of $10,500, but did not send it to him. In March 2005, approximately two months after the Committee served on respondent notice of this disciplinary proceeding, respondent sent a new check in the amount of $10,500 to Mr. Tebbetts. According to respondent, she sent the check after the Committee's staff informed her that Mr. Tebbetts wanted the money returned.

respect to the fee she would seek arbitration of their fee dispute and seek the entire amount she claimed she was owed—$138,900. By a second letter, dated June 13, Mr. Tebbetts wrote to the court that he wanted to retract the first letter and "absolve [respondent] of any wrongful comments [he] may have made."

A court attorney for the judge presiding over the divorce proceeding wrote the Departmental Disciplinary Committee (the Committee) requesting an inquiry into respondent's billing and fee practices. Following the Committee's investigation, the Committee asserted 35 charges of misconduct against respondent. While each of the charges is recounted in the majority's writing, certain charges bear emphasis. Charge 22 asserted that respondent engaged in a conflict of interest in violation of Code of Professional Responsibility DR 5-101 (a) (22 NYCRR 1200.20) by advising Mr. Tebbetts that, contrary to the court's October 18, 2000 order, he could use the money earmarked to reimburse his 401(k) plan to pay her fee. Charge 23 asserted that respondent violated DR 7-106 (a) (22 NYCRR 1200.37), advising a client to disobey a court ruling, when she counseled Mr. Tebbetts that the money remaining following the payment of the marital credit-card debt could be used for a purpose other than reimbursing his 401(k) plan. Charge 24 asserted that respondent violated DR 7-106 (a) when she disregarded the court's October 18, 2000 order requiring her to use the funds to reimburse Mr. Tebbetts' 401(k) plan. Charges 25 and 26 asserted that respondent violated DR 1-102 (a) (5) (engaging in conduct prejudicial to the administration of justice) and (7) (engaging in conduct adversely reflecting on an attorney's fitness to practice law) (22 NYCRR 1200.2) by not using the funds to reimburse Mr. Tebbetts' 401(k) plan. Charges 27 and 28 asserted that respondent violated DR 2-106 (a) (22 NYCRR 1200.11 [a] [charging an illegal or excessive fee]) and DR 1-102 (a) (7) (engaging in conduct adversely reflecting on an attorney's fitness to practice law) by sending the unsubstantiated bill of $168,400 to Mr. Tebbetts. Charges 29 through 31 asserted that respondent violated DR 7-102 (a) (1) (22 NYCRR 1200.33 [a] [1] [engaging in conduct the lawyer knew would harass another]) and DR 1-102 (a) (5) (engaging in conduct prejudicial to the administration of justice) and (7) (engaging in conduct adversely reflecting on an attorney's fitness to practice law), when, during the June 2001 telephone call, she pressured Mr. Tebbetts into retracting his letter to the court questioning her fee. Charge 35 asserted

that respondent violated DR 9-102 (a) (misappropriation/ commingling of client funds) and (b) (1) (failure to maintain separate accounts) (22 NYCRR 1200.46 ) when she used the funds she received from the ex-wife's attorney for purposes un- related to Mr. Tebbetts. Respondent answered the charges, admitting to certain factual allegations underlying the charges, but denying the charges themselves.

At the conclusion of a hearing, the Referee sustained 22 of the 35 charges, including charges 22 through 31 and 35. The Referee noted, among other things, that the $168,400 bill was "grossly excessive," and extremely disproportionate to the fees requested by opposing counsel, i.e, $17,821. He also noted that the proof was "overwhelming" that respondent pressured Mr. Tebbetts to retract the letter he sent to the court. Finally, the Referee commented that respondent "should have realized that using the escrow accounts for her own personal use, was not only improper, but could be deemed a conversion of funds." Nevertheless, the Referee recommended a penalty of an 18- month suspension.

A Hearing Panel of the Committee: (1) affirmed the Referee's findings with respect to the 22 charges he sustained, (2) disaf- firmed his findings with respect to four of the charges he did not sustain and sustained those charges, and (3) affirmed his findings with respect to nine of the charges he did not sustain. Thus, the Hearing Panel sustained 26 of the 35 charges against respondent. The Hearing Panel recommended a suspension of 2$^{1}/_{2}$ years.

The majority confirms the findings of fact and conclusions of law of the Hearing Panel, as well as the recommended penalty. While I agree with the majority that the Hearing Panel's find- ings of fact and conclusions of law should be confirmed, I dis- agree with the penalty the majority imposes on respondent.

"This Court has clearly established that, as a rule, disbar- ment is called for when an attorney repeatedly and intention- ally uses [a] client['s] escrowed funds for h[er] own purposes without permission" (*Matter of Nitti*, 268 AD2d 41, 42 [2000]).

> "[V]irtually without exception and absent extreme mitigating circumstances, . . . attorneys . . . who have intentionally converted client funds have com- mitted serious professional [mis]conduct which war- rants the sanction of disbarment . . . This result is mandated not only because of the obvious reflection

on the attorney's credibility, but, more importantly, by the duty to protect the public and to justify the public's confidence in lawyers as custodians of clients' funds" (*Matter of Kohn*, 31 AD3d 203, 206 [2006] [internal quotation marks and citations omitted]).

Here, respondent, over the course of approximately three years, made multiple withdrawals totaling over $30,000 from two accounts containing funds belonging to Mr. Tebbetts. Respondent knew that the money in those accounts belonged to Mr. Tebbetts; two court orders and a judgment clearly required that the funds respondent used for her own purposes were to be given to Mr. Tebbetts to reimburse his 401(k) plan. Thus, respondent repeatedly and intentionally used Mr. Tebbetts' escrowed funds for her own purposes without Mr. Tebbetts' permission (*Matter of Nitti*, 268 AD2d at 42), and our rule requires disbarment absent "extreme mitigating circumstances" (*Matter of Kohn*, 31 AD3d at 206; *see Matter of Harley*, 298 AD2d 49 [2002]; *Matter of Britton*, 232 AD2d 17 [1997]; *Matter of Ampel*, 208 AD2d 57 [1995]).

That the Committee did not characterize as "conversion" respondent's conduct in misappropriating Mr. Tebbetts' money is immaterial. No authority or principle of law requires such a characterization or allegation to trigger our general rule that an attorney who intentionally uses on multiple occasions a client's money should be disbarred. Indeed, the applicable disciplinary rule, DR 9-102 (a), does not itself use the term "conversion" (*"Prohibition against commingling and misappropriation of client funds or property*. A lawyer in possession of any funds or other property belonging to another person, where such possession is incident to his or her practice of law, is a fiduciary, and must not misappropriate such funds or property or commingle such funds or property with his or her own"*).

Until now, the determinative inquiry, as we stated in *Matter of Nitti* (268 AD2d at 42), has been whether the lawyer *"repeatedly and intentionally* use[d] clients' escrowed funds for h[er] own purposes without permission" (emphasis added). When that misconduct is committed, "[t]his Court has clearly established that, as a rule, disbarment is called for" (*id.*). Unfortunately, the majority forsakes this substantive inquiry and stresses that a particular label was not used by the Committee. Similarly focusing on form instead of substance, the majority disregards the fact that respondent knew she was being

charged with misappropriating Mr. Tebbetts' money and relies on "the absence of an opportunity to contest the allegation of intentional conversion."

Moreover, no extreme mitigating circumstances are present warranting a departure from the typical penalty of disbarment (*see Matter of Blumstein*, 22 AD3d 163, 166 [2005] ["rarely, if ever, will extenuating circumstances be found in situations involving repeated misappropriations over a lengthy period of time"]). While respondent asserts that she did not misappropriate the funds with a venal intent, this assertion is without merit. Venal intent is established by an attorney's admission that she knowingly withdrew funds from her client's accounts without his permission or authority, and that she used those funds for her own purposes (*Matter of Nitti*, 268 AD2d at 43; *see Matter of Gibbons*, 294 AD2d 53, 57 [2002] ["venality was established by respondent's knowing withdrawal of his client's funds, without consent or authority"]; *Matter of Glazer*, 218 AD2d 411 [1996]). Respondent admitted that she withdrew funds from accounts containing money belonging to Mr. Tebbetts and used those funds for her own purposes. Moreover, respondent did not have Mr. Tebbetts' authority or permission to do so.

Indeed, additional aggravating not mitigating circumstances are present as respondent committed additional acts of misconduct. Three charges were preferred against respondent for pressuring Mr. Tebbetts to retract his letter to the court questioning her fee, charges which the Referee sustained and the Hearing Panel affirmed—DR 7-102 (a) (1) (engaging in conduct the lawyer knew would harass another) and DR 1-102 (a) (5) (engaging in conduct prejudicial to the administration of justice) and (7) (engaging in conduct adversely reflecting on an attorney's fitness to practice law). Specifically, respondent issued a grossly excessive bill that was not itemized,[2] to which Mr. Tebbetts objected by writing to the court. Respondent then called Mr. Tebbetts and threatened to pursue her entire inflated fee in

---

**2.** As mentioned above, respondent was charged with violating DR 2-106 (a) (charging an illegal or excessive fee) and DR 1-102 (a) (7) (engaging in conduct adversely reflecting on an attorney's fitness to practice law) for sending the grossly excessive and unsubstantiated bill of $168,400 to Mr. Tebbetts. Both of these charges, as well as an additional charge pursuant to DR 1-102 (a) (5) (engaging in conduct prejudicial to the administration of justice) based upon respondent's failure to provide Mr. Tebbetts with periodic, itemized bills as required by 22 NYCRR 1400.2, were sustained by the Referee and affirmed by the Hearing Panel.

arbitration if he did not rescind his letter and withdraw his complaint regarding the fee. This conduct is all the more egregious because respondent did not comply with the uniform rule pertaining to domestic relations matters requiring her periodically to provide Mr. Tebbetts with written, itemized bills (22 NYCRR 1400.2). Respondent, an experienced matrimonial attorney, knew or should have known that the failure to comply with this regulation would preclude her from recovering any fee (*see Julien v Machson*, 245 AD2d 122 [1997]), let alone a grossly excessive one.[3]

In sum, respondent's serious pattern of misconduct dictates that she be disbarred.

ANDRIAS, J.P., SAXE, NARDELLI and SWEENY, JJ., concur. McGUIRE, J., dissents in a separate opinion and would disbar respondent.

Respondent suspended from the practice of law in the State of New York for a period of 2½ years, effective February 29, 2008 and until further order of this Court.

---

3. Respondent was also found to have violated numerous other disciplinary rules during the course of her representation of Mr. Tebbetts, including signing Mr. Tebbetts' name and improperly notarizing that signature on four different papers filed with Supreme Court (*see* DR 1-102 [a] [4], [5], [7]), failing to provide Mr. Tebbetts with a statement of client's rights at the outset of the representation (DR 2-106 [f]), engaging in a conflict of interest (DR 5-101 [a]), and disregarding court orders and advising Mr. Tebbetts he was allowed to do the same (DR 7-106 [a]).