Matter of Zhang (2016 NY Slip Op 05840)





Matter of Zhang


2016 NY Slip Op 05840


Decided on August 18, 2016


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 18, 2016
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Angela M. Mazzarelli, Justice Presiding,
David Friedman
John W. Sweeny, Jr.
Troy K. Webber
Ellen Gesmer, Justices.


M-1372 

[*1]In the Matter of Runan Zhang, an attorney and counselor-at-law: Departmental Disciplinary Committee for the First Judicial Department, Petitioner, Runan Zhang, Respondent.



Disciplinary proceedings instituted by the Departmental Disciplinary Committee for the First Judicial Department. Respondent, Runan Zhang, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on January 27, 1998.



Jorge Dopico, Chief Counsel, Departmental
Disciplinary Committee, New York
(Lance E. Philadelphia, of counsel), for petitioner.
Michael S. Frisch, pro hac vice;
Emery Celli Brinckerhoff & Abady, LLP
(Hal R. Lieberman, of counsel), for respondent.



PER CURIAM:


Respondent Runan Zhang was admitted to the practice of law in the State of New York by the First Judicial Department on January 27, 1998. Respondent has maintained a business address in Rockville, Maryland and Washington, D.C., and there is no indication that she has an office, or has practiced law, in New York. Accordingly, jurisdiction is based upon her admission in this Department. Respondent was also admitted to practice in the State of Maryland on June [*2]21, 2000, and was admitted to practice in the District of Columbia on December 12, 2005.
The Departmental Disciplinary Committee (Committee) now seeks an order, pursuant to the Rules of the Appellate Division, First Department (22 NYCRR) 603.3, imposing reciprocal discipline in the form of an appropriate sanction upon respondent, based upon discipline imposed by the Maryland Court of Appeals (MCA), stemming from respondent's misconduct in Virginia.
Respondent's misconduct occurred while representing her niece, (Wife), in an annulment action in Virginia, where respondent is not admitted to practice law. On April 10, 2010, Wife, a non-U.S. citizen, married (Husband), a U.S. Citizen, in Virginia. On April 21, 2010, respondent filed a Petition for Alien Relative with the U.S. Citizenship & Immigration Services on Husband's behalf, and continued to represent Husband in the immigration matter until she withdrew as Husband's counsel on November 26, 2010.
Husband and Wife separated in October of 2010, and in early November of 2010, Wife asked respondent to help her pursue an annulment. On November 11, 2010, Diane Metcalf, respondent's colleague who belonged to the Maryland and Virginia bars, agreed to represent Wife as cocounsel, and move for respondent's admission to the Virginia Court pro hac vice. Respondent advised Metcalf that Metcalf would be unable to communicate directly with Wife, as Wife did not speak fluent English.
Subsequently, respondent prepared a complaint for annulment alleging immigration fraud relating to the marriage, and in a November 15, 2010 email to Metcalf, respondent wrote:

"I got all the documents ready for filing the annu[]lment case in VA. But realized that I was the counsel representing both [Wife] and [Husband]. If he hired a [] lawyer, they would disqualify me for the conflict [of] interest. I am thinking to file the complaint first as the pro se case, and get you involved when the court hearing comes up."

On November 18, 2010, Wife filed the complaint as a pro se plaintiff to conceal respondent's conflict of interest due to her concurrent representation of Husband in the immigration matter. On January 7, 2011, respondent, Metcalf, and Husband's counsel, appeared in court for a hearing and entered into an agreement to seek only an annulment and no other relief. Metcalf signed the agreement on Wife's behalf based upon respondent's false assurances that Wife had consented to the agreement. However, the parties could not agree on the grounds for annulment.
On February 17, 2011, respondent proposed to Husband's counsel that annulment be pursued on grounds of Husband's alleged impotency, although respondent had not discussed the issue of grounds with Wife, and had no basis to pursue an annulment based on impotency. That same day, respondent and Husband's counsel agreed to settle the annulment action for $1,500 and an admission that Husband had an impotency problem.
At a February 18, 2011 court hearing, respondent informed Metcalf that Husband was impotent, and that Wife had consented to use impotency as grounds for the annulment and settle for $2,000. Metcalf signed the agreement based on respondent's false assurances, and the court signed a consent order.
The next day, on February 19, 2011, respondent informed Wife of the agreement, learned from Wife that Husband was actually not impotent, and advised Metcalf that the consent order would need to be vacated. On March 1, 2011, Wife contacted Metcalf via email for the first time, stating in fluent English that she had not been advised of the terms of the agreement before its execution, had not consented to them, and that Husband was not impotent.
Subsequently, respondent moved to vacate the consent order, and helped Metcalf prepare arguments for a March 18, 2011 hearing. Respondent and Metcalfs' arguments contained multiple misrepresentations, including that Wife had generally authorized Metcalf to settle the case and that there had been a miscommunication due to a language barrier. On March 18, 2011, the Virginia Court vacated the consent order, and found that an attempted fraud had been perpetrated on it, in that respondent had misrepresented to Metcalf and the court that Wife had consented to using impotency as grounds for the annulment, while in fact, respondent had no good faith basis for the impotency claim.
On April 7, 2011, Husband filed a counter-complaint for divorce. Ultimately, Husband and Wife were granted a divorce on grounds of mutual separation.
By order of July 21, 2014, the MCA disbarred respondent from the practice of law for violating Maryland Lawyers' Rules of Professional Conduct (MLRPC) 1.1, 1.2, 1.4, 1.7, 1.16, 3.1, 3.7, 4.1, 5.5, 7.4 and 8.4 (440 Md 128, 100 AD3d 1112 [2014]). The MCA found that respondent, by drafting pleadings and participating in settlement negotiations for Wife's annulment action in Virginia, while concurrently representing Husband in an immigration proceeding, and further attempting to conceal her violations by initially having Wife file the complaint pro se, violated MLPRC rules regarding conflict of interest, unauthorized practice of law, and dishonesty. Respondent further violated MLPRC allocation of authority rules by misrepresenting to Metcalf that Wife did not speak English fluently and had consented to bringing an annulment action on the grounds of impotency, when in truth, Wife spoke fluent English, had never consented to bringing an annulment action on impotency grounds, and in fact had never informed respondent her husband was impotent.
The MCA found that although respondent's lack of prior disciplinary violations mitigated her culpability, her violation of several MLPRC rules while engaging in a pattern of misconduct warranted disbarment. Two judges dissented, arguing that a less severe sanction was appropriate, as respondent did not act based upon a selfish motive, but rather to help her niece. Subsequently the District of Columbia Court of Appeals and the U.S. Board of Immigration Appeals imposed reciprocal discipline and disbarred respondent.
The sole defenses to reciprocal discipline are: (1) lack of notice and opportunity to be heard in the foreign jurisdiction;
(2) infirmity of proof establishing the misconduct in the foreign jurisdiction; or (3) the misconduct at issue in the foreign jurisdiction does not constitute misconduct in New York (Matter of Hoffman, 34 AD3d 1 [1st Dept 2006]).
Here, due process was satisfied as respondent was provided with sufficient notice, and had an opportunity to be heard in the Maryland proceedings, in which she participated, was represented by counsel, offered testimony, and cross-examined witnesses. Respondent's arguments that due process was lacking because opposing counsel called only Metcalf as a witness, and invoked Husband's attorney-client privilege to prevent respondent from explaining her representation of Husband, were rejected by the MCA, which noted that respondent has no civil right to confront her accuser, and that Husband's attorney was deposed in the proceeding. Further, respondent does not dispute that her concurrent representation of Wife and Husband constituted an impermissible conflict of interest.
Respondent's conclusory argument that there is a gross infirmity of proof fails, as the MCA's findings were supported by sufficient proof, based upon witness testimony and evidentiary submissions.
Finally, respondent does not dispute that her misconduct constitutes misconduct in New York, as the violated MLRPC rules have analogous counterparts under the New York Rules of Professional Conduct (22 NYCRR 1200.00).
The remaining issue is the appropriate sanction. In reciprocal disciplinary matters, this Court generally accords significant weight to the sanction imposed by the foreign jurisdiction and rarely deviates from the foreign jurisdiction's discipline (see Matter of Peters, 127 AD3d 103, 109 [1st Dept 2015]; compare Matter of Lowell, 14 AD3d 41 [1st Dept 2004], appeal dismissed 4 NY3d 846 [2005], lv denied 5 NY3d 708 [2005]). However, here, the Committee notes that this Court has often imposed less severe sanctions, such as suspension, for similar misconduct by first-time offenders who were not motivated by personal gain (see Matter of Gurevich, 94 AD3d 39 [1st Dept 2012]; Matter of Larsen, 50 AD3d 41 [1st Dept 2008]), and has reserved disbarment for more egregious conduct extending over greater periods of time (see Matter of Zweig, 117 AD3d 96 [1st Dept 2014]; Matter of Fagan, 58 AD3d 260 [1st Dept 2008], appeal dismissed 12 NY3d 813 [2009]). Further, respondent has submitted nine documents in mitigation, attesting to her character and provision of pro bono services to nonprofit organizations, which were not [*3]offered in the Maryland proceedings.
We are persuaded that respondent's misconduct, although serious and warranting suspension, presents a rare circumstance in which it is appropriate to deviate from the foreign jurisdiction's discipline (see Matter of Kim, 138 AD3d 8 [1st Dept 2016]). A five-year suspension, as opposed to disbarment, acknowledges the deference we traditionally accord to matters involving reciprocal discipline, and at the same time is more consistent with this Court's jurisprudence for a first-time offender, who has submitted multiple affidavits attesting to her pro bono endeavors, and whose one instance of misconduct was solely for a period of five months, and was not motivated by the desire for personal gain (see Matter of Shearer, 94 AD3d 128 [1st Dept 2012]; Matter of Gurevich, 94 AD3d at 43; Matter of Larsen, 50 AD3d 41 at 47.
Accordingly, the Committee's petition to impose reciprocal discipline in the form of an appropriate sanction pursuant to 22 NYCRR 603.3 should be granted, and respondent suspended from the practice of law for a period of five years.
All concur.
Order filed. [August 18, 2016]
Mazzarelli, J.P., Friedman, Sweeny, Webber, and Gesmer, JJ.
Respondent suspended from the practice of law in the State of New York for a period of five years, effective the date hereof, and until further order of this Court. Opinion Per Curiam. All concur.