In the Matter of ARNOLD SCHILDHAUS, an Attorney, Respondent.
ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.
First Department, May 11, 1965.

*John G. Bonomi* (*Michael Franck* with him on the brief), attorney for petitioner.

*Arnold Schildhaus,* respondent in person.

*Per Curiam.* The respondent was admitted to practice as an attorney and counsellor at law in this Department on October 16, 1933. This disciplinary proceeding was instituted against him under subdivision 2 of section 90 of the Judiciary Law. The matter was duly referred to a Referee with direction to take testimony as to the charges and report thereon to this court. The Referee, on the basis of a comprehensive and well-reasoned report, concluded that Charges I, II and III, as alleged in the petition and amended petition were not sustained, but that Charges IV, V and VI, as alleged in the supplemental petition were duly established.

The Referee's report is in all respects supported by the evidence. Respondent's several points attempting to attack the jurisdiction of this court and purporting to raise constitutional issues plainly lack merit and do not warrant discussion. The Referee's report should be confirmed.

Charges IV and V were presented by a supplemental petition, filed November 29, 1962. They allege professional misconduct in material misrepresentations by the respondent to the New York City Magistrates' Courts in the course of two separate and independent prosecutions pending against him for violations of the Multiple Dwelling Law. It is alleged that the respondent falsely represented to the court that Unity Estates, Inc., a corporation, was the owner of the subject premises and that, on the basis of such representation and on respondent's application, the corporation was substituted in respondent's place as the party defendant. It is further alleged that the respondent knew,

or had reason to know, that his representations in each case with respect to ownership of the premises were false.

These charges were fully sustained by the evidence. In the prosecution pending against respondent in the City Magistrates' Court, Bronx, entitled *People ex rel. Cogen* v. *Schildhaus,* the respondent, on March 13, 1957, at a time for pleading, was asked by the court whether the subject houses were "owned by a corporation", and he replied "Yes, sir" and also stated that he wanted to substitute the corporation "Unity Estates, Inc." as the defendant in the prosecution. He further stated that he was authorized to plead for the corporation. The fact that Unity Estates, Inc., did not own the subject premises at the time of the alleged Multiple Dwelling Law violations was established by respondent's admissions and testimony in the proceedings here.

Also, in the prosecution pending against the respondent in the City Magistrates' Court, Bronx, entitled *People ex rel. Rossillo* v. *Schildhaus,* the respondent, on August 2, 1957, made a motion in court "to substitute in place and stead of Arnold Schildhaus, the owner of the house, Unity Estates, Inc.", stating that he was appearing as attorney for said Unity Estates, Inc. He further said that he thought he was the president of the corporation and that "for the corporation, I am entering a plea of guilty." It was established, however, by the respondent's admissions and testimony before the Referee that, at the time of the alleged Multiple Dwelling Law violations, Unity Estates, Inc., was not the owner of the subject premises.

The respondent's position here was that the representatives of the New York City Department of Housing and Buildings and the Assistant Corporation Counsel in charge of the prosecutions understood that the particular corporation, Unity Estates, Inc., was not the owner; and that they had indicated that they did not care who was to be the defendant in each case, whether the actual owner or not. The Referee rejected the respondent's testimony in this connection. Furthermore, as the Referee found in the one case, "no arrangement respondent might make with the representatives of the Buildings Department and the Assistant Corporation Counsel, and irrespective of what respondent did or omitted to do to induce it, such arrangement could not furnish the slightest excuse for respondent's imposition on the Court".

Charge VI, set forth in the supplemental petition, alleged that the respondent, in connection with three certain written applications to the Royal State Bank of New York for loans on behalf of certain corporations of which he represented himself to be

the president, made false statements in writing concerning the financial condition, ownership, control and/or operation of the corporations. Two of the applications, bearing dates November 9, 1953 and January 1, 1955, were made in behalf of Unity Estates, Inc. and were signed " Unity Estates, Inc. by A. Schildhaus, [respondent] Pres.". The other application was one made in behalf of House Realty Corp., dated April 17, 1956, and signed " House Realty Corp. by H. A. Schildhaus, [respondent] Pres.". It was duly established that certain statements which were part of the respective applications when made and which were filled out in respondent's handwriting, contained material statements which were false and known to be false at the time when made, to wit:

(1) The statement in the loan application by Unity Estates, Inc., dated November 9, 1953, that " Emray & Unity Estates are 100% owned by A. Schildhaus ", whereas in fact they were not so owned. Emray (Emray Realty Corp.) was another corporation in which respondent at one time had an interest.

(2) The respondent's subscription of the loan applications dated November 9, 1953 and January 1, 1955, as " Pres." of Unity Estates, Inc., whereas he was not then an officer of the corporation.

(3) The statement in the loan application dated April 17, 1956, that the title to certain apartment buildings therein mentioned was in House Realty Corp., whereas in fact the title to the premises at the time was otherwise held.

(4) Statements in the three applications that certain apartment buildings had stated net income for certain years, whereas it appears that the respective premises were being operated at a loss or, in any event, with an income return substantially less than that stated.

The charges of professional misconduct, sustained as against the respondent, are serious in nature. They demonstrate such a lack of professional and moral responsibility as to merit severe disciplinary action.

An attorney shall " strive at all times to uphold the honor and maintain the dignity of the profession." (Canons of Professional Ethics, canon 29.) The " conduct of the lawyer before the Court * * * should be characterized by candor and fairness ". It is unprofessional for a lawyer as " an officer of the law charged * * * with the duty of aiding in the administration of justice " to engage in practices having a tendency to mislead the court. (Canons of Professional Ethics, canon 22.) An attorney is to be held strictly accountable for his state-

ments or conduct which reasonably could have the effect of deceiving or misleading the court in the action to be taken in a matter pending before it. The court is entitled to rely upon the accuracy of any statement of a relevant fact unequivocally made by an attorney in the course of judicial proceedings. So, a deliberate misrepresentation by an attorney of material facts in open court constitutes serious professional misconduct. (See *Matter of Rotwein*, 20 A D 2d 428, 430. See, further, Drinker, Legal Ethics, p. 74; 7 C. J. S., Attorney and Client, § 23, p. 741.)

Here, it is clear that, as charged, the respondent "knew or had reason to know" that his representations to the court in the Multiple Dwelling Law prosecutions were false. The misrepresentations by the respondent with respect to the ownership of the subject premises were not inadvertent. They were made for the purpose of furnishing a basis on the record for the dropping of the respondent individually as a party defendant and the substitution of a corporate defendant to be charged with the convictions in his place. This was an imposition on the court and the respondent's motives are immaterial. It is no excuse in the one case that he did not want to involve his sister, who was an alleged owner of the subject premises, and that he wanted a "first offender" as a defendant. As found by the Referee, this "merely makes matters worse by demonstrating that the imposition was deliberate and intentional, and not a mere inadvertence."

In addition to the foregoing instances of express misrepresentations in Magistrates' Court proceedings showing want of professional integrity on part of respondent, the evidence in support of Charge VI furnishes instances of lack of trustworthiness in ordinary business affairs. "While commercial activities are not forbidden a lawyer, he 'must see that his dealings as a business man are as upright as should be his dealings in his professional capacity'". (*Matter of Chartoff*, 16 A D 2d 277, 280.) "'It is well and abundantly settled that an attorney may be disciplined for misconduct even though such misconduct was outside of and not a part of his professional acts'". (*Matter of Wilcox*, 243 App. Div. 103, 104; *Matter of Dolphin*, 240 N. Y. 89, 92–93.) The making of false representations to induce the extension of credit, as an example of commercial fraud, denotes moral turpitude. The misconduct of an attorney in this connection warrants disciplinary action for the protection of the public and the preservation of the reputation of the Bar. (*Matter of Chartoff, supra; Matter of Relin*, 19 A D 2d 460; *Matter of Rotwein, supra; Matter of Spier*, 269 App. Div. 1058;

*Matter of Isaacs,* 172 App. Div. 181, 184; *Matter of Alexander,* 137 App. Div. 770.)

In determining the disciplinary measures to be adopted here, we have given due consideration to the attitude, conduct and testimony of the respondent in this proceeding. As demonstrated by the Referee's report, the respondent's testimony was in many instances irresponsible, evasive and contradictory. The Referee, in reviewing the evidence, had occasion in his report to state that the respondent's testimony in explanation of his misrepresentations in the Magistrates' Court proceedings, "is so fantastic that it has to be read to be appreciated"; that respondent's testimony with reference to the loan application statements is "so preposterous that, in my opinion, it borders on an affront to the court"; that respondent's arguments for inadmissibility of sheets inserted in the loan applications demonstrate a "woeful disregard of the obligation which rests upon every lawyer to act fairly and honorably, irrespective of whether it be by word of mouth or in writing, and if the latter, regardless of whether the writing be signed or unsigned"; and that the "effort to minimize the importance of the falsity in the statements [to the bank] furnished by respondent must be known to him to be as evasive as it is deceptive".

The lawyer's function in the administration of justice requires a rigid adherence on his part to the aforesaid canon 22 prescribing candor and fairness in all dealings with the court. The deliberate effort on the part of a lawyer to mislead the court in a material manner, whether by express misrepresentations, unfair and evasive tactics or other irresponsible means, has a tendency to obstruct justice; and there can be no justification for the same. The lawyer's duty of candor and fairness is not suspended for the purpose of making a defense to a disciplinary proceeding. "Where a member of the bar is charged with delinquencies, as in this case, there is but one course open to him — to come forward frankly and make such truthful explanations as he may, and with equal frankness admit his mistakes. It does not profit him before this court to rely upon technical defenses or employ sophistry in argument in an attempt to establish a superficial justification." (*Matter of Feinstein,* 233 App. Div. 541, 542–543.) The candor and fairness, or lack thereof, of the attorney in his testimony and conduct in such proceeding is a factor to be considered in fixing the appropriate sanction. (See *Matter of Rotwein, supra.*)

The charges, which were sustained, indicate that the respondent lacks the character and fitness requisite for an attorney at law in this State and such lack of character and fitness is

confirmed by the respondent's testimony and conduct in these proceedings.

Quite appropriate here is the statement of MARTIN, P. J., in *Matter of Kunstler* (248 App. Div. 393, 400–401): "We are concerned here solely with the question of respondent's fitness to continue as a member of a profession which, as Lord MANS-FIELD said in *Ex Parte Brounsall* (2 Cowp. 829), 'should stand free from all suspicion.' One of the requisites for admission to the bar is that the applicant be a person of good moral character. Membership may not be continued on a lower standard, the same condition must be maintained. Had it appeared at the time of respondent's application for admission to the bar that he had connived at thwarting the orderly administration of the law, had been heedless of the force of an oath to testify truthfully, indifferent to the truth and reckless to the point of dishonesty in financial statements, could we in justice to the public admit him to the bar? The answer is obvious."

The administration of the proper punishment "is not only justice to the profession itself, but it is a protection to the public which ought to be justified in its belief that any one holding a license to practice in the courts of this state is at least of good moral character and fit to be intrusted with the duty of protecting the interests of others." (*Matter of Ryan,* 143 N. Y. 528, 531.)

On the basis of the evidence before the Referee and on his report, and with due regard to respondent's testimony, he should be disbarred.

BOTEIN, P. J., RABIN, VALENTE and EAGER, JJ., concur in *Per Curiam* opinion; STEVENS, J., dissents and votes to suspend respondent for a period of two years.

Respondent disbarred effective June 14, 1965.