[940 NYS2d 570]

In the Matter of DAVID M. SHEARER (admitted as DAVID MICHAEL SHEARER), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 13, 2012

## APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Jeremy S. Garber* of counsel), for petitioner.

*Michael S. Ross,* for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent, as David Michael Shearer, was admitted to the practice of law in the State of New York by the Second Judicial Department on January 13, 1988. At all times relevant to these proceedings, he maintained an office for the practice of law within the First Judicial Department.

On October 14, 1997, respondent, on behalf of his firm, Shearer & Essner, LLP, entered into an agreement with a Maryland attorney, Dov Apfel, under which respondent was to participate as cocounsel in a medical malpractice action to be prosecuted in New York. The agreement, which required respondent to prepare and file documents to enable Apfel to be admitted to practice law in New York pro hac vice, provided that, in consideration for his services, respondent would receive 50% of the total legal fee.

Apfel had been retained by Margaret Leskinen on May 12, 1997 to prosecute the action on behalf of her son, Michael, who sustained brain damage during labor and delivery in June 1988. Apfel's retainer authorized him to retain New York counsel and to work out an agreement to divide the legal fees.

In 1998, respondent filed the malpractice action in Supreme Court, Bronx County (*Leskinen v Fusco*, index No. 15135/96). Thereafter, he handled all aspects of the case, without taking any steps to have Apfel admitted in New York. In July 2003, respondent settled the action for $4.25 million. On August 6, 2003, he notified Apfel and told him that payment of 50% of the $574,047.01 legal fee would be unfair as Apfel breached the participation agreement by failing to render any legal services. A bitter dispute over the fee ensued.

On September 26, 2003, respondent filed a retainer statement for the malpractice action, dated September 22, 2003, with the

Office of Court Administration (OCA). The retainer statement indicated that there was a September 10, 1998 retainer agreement between Mrs. Leskinen and respondent's firm and that the delay in filing was "[d]ue to an administrative error in my office."

In May 2005, this Court (*Leskinen v Fusco*, 18 AD3d 387 [2005], *lv dismissed* 6 NY3d 807 [2006]) ruled that Apfel was entitled to 50% of the disputed legal fee, rejecting respondent's argument that Apfel was not entitled to share in the fee because he engaged in the unauthorized practice of law. Noting that "[respondent] attempted to appropriate the entire fee through the subterfuge of a proposed infant's compromise order that did not disclose [Apfel's] claim to half of the fee and the fact that such claim was then being actively litigated before another justice," we remanded the matter to Supreme Court for further proceedings on whether respondent's conduct in connection with the fee dispute warranted the imposition of sanctions (*id.* at 388-389).

By separate orders dated October 10, 2006, Justice Stinson imposed a $5,000 sanction against respondent and his firm payable to the Lawyers' Fund for Client Protection (13 Misc 3d 1244[A], 2006 NY Slip Op 52342[U] [2006]), and a $10,000 sanction against the firm payable to Apfel (*Leskinen v Fusco*, NYLJ, Oct. 25, 2006, 2006 NY Misc LEXIS 3109 [Sup Ct 2006]). The $5,000 sanction was based on a finding that respondent's desire for the full fee, misrepresentations to the court, and other acts, unnecessarily delayed payment of the settlement to the Leskinen family, and that his "intentional withholding of information that was necessary and vital to the court [was] tantamount to the assertion of a material fact that was false" (2006 NY Slip Op 52342[U], *2). As to the $10,000 sanction, Justice Stinson found that respondent's

> "actions and . . . absolute refusal to recognize co-counsel's right to attorney's fees . . . and . . . his own failure to comply with his obligation concerning the pro hac vice admission of Mr. Apfel . . . satisfies the court that his conduct . . . was without merit . . . and was undertaken [to], and, did in fact, prolong the resolution of the litigation . . . Additionally, the court finds that he made material factual statements that were false and intended to mislead the court" (*Leskinen v Fusco*, NYLJ, Oct. 25, 2006, 2006 NY Misc LEXIS 3109, *5).

In July 2009, the Departmental Disciplinary Committee (Committee) filed 14 charges against respondent alleging that he

violated nine disciplinary rules, including Code of Professional Responsibility DR 1-102 (a) (4), (5) and (7) (22 NYCRR 1200.3 [a] [4], [5], [7]), while engaged in the fee splitting dispute with Apfel. Among other things, respondent allegedly submitted documents to OCA falsely claiming that his firm entered into a retainer agreement directly with Mrs. Leskinen; gave a false excuse for his delay in filing that retainer; failed to disclose the fee dispute, which was being actively litigated before another Justice, when he sought the infant's compromise order; improperly notarized documents, and testified falsely before the court and the Committee. In his answer, respondent admitted certain factual allegations but denied any professional misconduct.

In January 2010, after hearing, the Referee sustained charges 1, 2, 4-11, and 13-14 and recommended disbarment. Charges 3 and 12 were dismissed. The Referee found, among other things, that

> "Mrs. Leskinen's testimony that she never signed a separate retainer with Respondent or his firm to be absolutely credible and Respondent's claim to the contrary to be a continuance of the contrivance first born in 2003 when Apfel would not accept his proposal to take less than 50% of the legal fee."

In July 2010, the Hearing Panel issued a report in which it confirmed the Referee's liability findings, but recommended that the sanction be reduced to a five-year suspension, with one member confirming the Referee's recommendation of disbarment. The Panel found that, after Apfel retained counsel, he and respondent "embarked upon an acrimonious, scorched earth litigation disproportionate to the fee dispute. It was at that point that Respondent [at the expense of the Leskinen family] began to subvert the settlement approval process and attempt to use it to achieve a tactical advantage in the fee dispute." Deferring to the Referee's credibility conclusions, the Panel also found that "Respondent's claim that Mrs. Leskinen signed a separate retainer agreement with [his] firm in September 1998 is just not supported . . . As a consequence, every time Respondent asserted under oath or in a court filing that there was such an agreement, it was a false statement." In recommending a five-year suspension, the majority considered that the Committee had not sought disbarment, the lack of precedent supporting disbarment, that the misconduct was not directed at the client (other than indirectly interfering with payment), that the

conduct could be considered a single episode, that the misconduct was essentially limited to one set of circumstances, and the lack of prior discipline.

The Committee now moves for an order confirming the Referee's and Hearing Panel's findings of fact and the Hearing Panel's sanction recommendation. Respondent cross-moves to, among other things, disaffirm the Hearing Panel's report and impose no sanction, or alternatively, to impose no more than a three-month suspension.

Upon our review of the record, we confirm the findings of fact and conclusions of law as to respondent's liability under charges 1, 2, 4-10, and 13-14 and vacate them as to respondent's liability under charge 11.

On the issue of whether Mrs. Leskinen executed a retainer directly with his firm, respondent argues that she and her son admitted executing the retainer and that there was no reason for him to fabricate the claim, given that Judiciary Law § 474-a sets the fee in medical malpractice actions and DR 9-102 (b) (4) (22 NYCRR 1200.46 [b] [4]) protects Apfel's interest therein. Respondent also challenges Mrs. Leskinen's motive. These arguments were considered by the Referee, whose credibility findings are entitled to deference (see *Matter of Weinstein*, 4 AD3d 29, 33 [2004], *lv denied* 3 NY3d 608 [2004]).

Unlike *Matter of Aranda*, (32 AD3d 58 [2006]), on which respondent relies, the Referee's finding was supported by Mrs. Leskinen's testimony. Her statement in the infant's compromise petition, prepared by respondent, that she executed a retainer with his firm, was adequately explained by her testimony that the word "retained" was not the focus of the document and that getting the money for her son was paramount. Mrs. Leskinen repeatedly explained that to her retained means "to hire" and that she considered respondent to have been hired to represent her and her son by Apfel. She unequivocally testified that the only retainer she ever signed was the one with Apfel in 1997 and denied ever signing a retainer agreement directly with respondent and his firm. Mrs. Leskinen further testified that she refused to file a "replacement" retainer agreement with respondent's firm as "it . . . seemed kind of fishy."* Respondent also argues that there is no "evidence of unethical intent

---

* While the Referee and Hearing Panel did not address the similar retention claim made in her son's affidavit, the same reasoning applies. Further, as Mrs. Leskinen is the only one alleged to have executed a retainer with

by [him]," with such "intent . . . somehow . . . imputed." Of course, absent an admission, evidence of intent must be inferred from one's conduct and the inferences here were supported by the evidence. Further, while the attorney's fee in medical malpractice cases is regulated and respondent was bound to protect the disputed portion of the fee, he could still have believed that his actions would give him a strategic advantage in the fee splitting dispute.

Accordingly, the Hearing Panel correctly sustained charges 1 (filing a retainer statement with OCA in 2003 which falsely stated that Mrs. Leskinen retained his firm), 2 (filing an affirmation with OCA which falsely stated that the delay in filing the retainer was due to an administrative error), 4 (making a false statement by submitting a proposed infant's compromise order seeking payment of the full attorneys' fees pursuant to a nonexistent retainer agreement), 5 (filing a petition signed by Mrs. Leskinen which falsely stated that she retained his firm), 6 (making a false statement by submitting an affidavit in support of the infant's compromise order which requested that all legal fees be paid to respondent's firm and that his firm had been retained), 7 (engaging in conduct involving dishonesty by sending Mrs. Leskinen an October 21, 2003 letter asking her to sign a new copy of the retainer agreement allegedly signed on September 10, 1998), 8 (making a false statement by submitting a revised proposed infant's compromise order seeking payment of the full attorneys' fees pursuant to a nonexistent retainer), 13 (making false statements of fact by testifying at the August 10, 2005 sanction hearing about a nonexistent retainer agreement), and 14 (testifying falsely at the Committee's depositions regarding the nonexistent retainer agreement, the delay in filing a retainer statement with OCA and the purported destruction of that retainer agreement).

While respondent admits the conduct underlying charge 9, that he improperly notarized his clients' signatures, he asserts that, absent any wrongful intent or purpose, no violation lies. This position is unavailing as the notarization of a signature outside the presence of the person signing a document constitutes conduct involving dishonesty, fraud, deceit or misrepresentation (DR 1-102 [a] [4]) and conduct prejudicial to the administration of justice (DR 1-102 [a] [5]) (*see Matter of Larsen*, 50 AD3d 41, 43 [2008]). Further, the Referee's finding that

---

respondent's firm, there is no reason to fault the Committee for failing to also present the testimony of Mrs. Leskinen's son and husband.

respondent was untruthful when he claimed that, despite his experience, he had believed that his notarization practice was proper, is entitled to deference. Accordingly, the Hearing Panel properly sustained charge 9.

Charge 10, which alleged that respondent improperly concealed or knowingly failed to disclose a fact which he was required by law to reveal by failing to advise the court, in his November 2003 submissions in the infant's compromise proceeding and a December 2003 appearance, that the fee dispute was pending before another justice, was properly sustained on collateral estoppel grounds based upon Supreme Court's October 10, 2006 finding that his "intentional withholding of information that was necessary and vital to the court is tantamount to the assertion of a material fact that was false" (2006 NY Slip Op 52342[U], *2). Respondent had a full and fair opportunity to litigate this issue at the sanction hearing, where the issue was decisively decided against him (*see Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 455 [1985]). In any event, as found by the Hearing Panel, the evidence independently supported the charge (*see Matter of Issler*, 283 AD2d 59 [2001]).

However, charge 11, which alleged improper ex parte communications with the court, without providing notice to "opposing counsel" in violation of, inter alia, DR 7-110 (b) (2) (22 NYCRR 1200.41 [b] [2]) should not have been sustained. While Apfel's interest in the fee dispute was adverse to respondent's, Apfel was, as found by Justice Stinson and this Court, his "cocounsel" and thus, cannot also be said to have been an "opposing party" (*see* e.g. *Grievance Comm. for S. Dist. of N.Y. v Simels*, 48 F3d 640, 650 [2d Cir 1995]).

With regard to the severity of the sanction to be imposed, "[g]enerally, misconduct involving . . . filing false instruments . . . has resulted in sanctions ranging from a short suspension to disbarment depending on the repetitiveness of the misconduct and the desire for personal profit" (*Matter of Becker*, 24 AD3d 32, 34 [2005]). Further,

> "[a]n attorney is to be held strictly accountable for his statements or conduct which reasonably could have the effect of deceiving or misleading the court in the action to be taken in a matter pending before it. The court is entitled to rely upon the accuracy of any statement of a relevant fact unequivocally made by an attorney in the course of judicial proceedings. So, a deliberate misrepresentation by an attorney of

material facts in open court constitutes serious professional misconduct." (*Matter of Schildhaus*, 23 AD2d 152, 155-156 [1965], *affd* 16 NY2d 748 [1965]; *see also Matter of Donofrio*, 231 AD2d 365 [1997].)

False statements to the Committee in written responses and under oath at a deposition also merit suspension (*see Matter of Glotzer*, 191 AD2d 112 [1993] [six-month suspension]; *Matter of Harris*, 139 AD2d 253 [1988] [two-year suspension]) and a lack of candor while testifying at the hearing and the failure to accept responsibility for misconduct or show understanding that a wrong occurred is an aggravating factor (*see Matter of Klein*, 183 AD2d 279 [1992], *lv denied* 81 NY2d 703 [1993] [two-year suspension]).

Under this governing legal precedent, when balanced against the mitigating factors, respondent's misconduct of testifying falsely before the court, the Committee and the Referee as to the existence of a retainer agreement and making such a claim in documents filed with the court and OCA, improperly notarizing signatures, and seeking an infant's compromise order without informing the court of the fee dispute or giving Apfel or his counsel notice, aggravated by respondent's failure to accept responsibility, warrants the imposition of a 2½-year suspension (*see Matter of Fauci*, 28 AD3d 192 [2006] [one attorney suspended for three years and his brother suspended for 18-months in connection with, inter alia, the making of false statements in a bar application and neglect of a matter, with lack of remorse and failure to take responsibility for their misconduct considered in aggravation]; *Matter of Singh*, 195 AD2d 197 [1994] [three-year suspension for attorney who, inter alia, falsified the date of his client's signature and notarized it months after it was signed in violation of DR 1-102 (a) (5) and (7)]; *Matter of Rabinowitz*, 189 AD2d 402 [1993], *lv denied* 82 NY2d 653 [1993] [three-year suspension for attorney who neglected two legal matters entrusted to him, misrepresented the status of a legal matter to two clients, provided misleading information to the Disciplinary Committee and failed to comply with a court order to transfer a client's file to her new attorneys]).

In reducing the sanction, we note that despite the number of sustained charges, they arise from a course of conduct in the pursuit of legal fees in one matter in an otherwise unblemished career of an attorney with a good reputation. As conceded by the Committee in urging a five-year suspension rather than the

disbarment recommended by the Referee, respondent's misconduct was not directed at his client and did not extend to other matters. His cooperation with the Committee, in the area of document production and admissibility, was "exemplary" and respondent submitted evidence attesting to his good character.

Accordingly, the Committee's petition should be granted to the extent of confirming the Hearing Panel's findings of fact and conclusions of law and sustaining charges 1, 2, 4-10, 13, and 14 against respondent, and respondent is suspended from the practice of law for a period of 2½ years and until further order of this Court, and respondent's cross motion should be granted to the extent of disaffirming the Hearing Panel's finding sustaining charge 11, and otherwise denied.

MAZZARELLI, J.P., ANDRIAS, MOSKOWITZ, RICHTER and MANZANET-DANIELS, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of 2½ years, effective 30 days from the date hereof and until further order of this Court. Cross motion granted to the extent of disaffirming the Hearing Panel's finding sustaining charge 11, and cross motion otherwise denied.