[49 NYS3d 548]

In the Matter of FENG LI, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, March 22, 2017

**APPEARANCES OF COUNSEL**

*Gary L. Casella*, White Plains (*Faith Lorenzo* of counsel), for petitioner.

*Feng Li*, New York City, respondent pro se.

**OPINION OF THE COURT**

Per Curiam.

By order dated May 21, 2013 (213 NJ 523, 65 A3d 254 [2013]), the Supreme Court of New Jersey disbarred the respondent for, inter alia, knowing misappropriation of client funds, agreeing with the majority in a 4-3 decision by the Supreme Court of New Jersey Disciplinary Review Board (hereinafter DRB). The core controversy in this matter concerns the respondent's entitlement to legal fees from a judgment he recovered on behalf of a group of investor clients, in particular, his disbursement of the funds recovered when the parties disagreed as to the method of calculation of the respondent's share of the recovery. The controversy spawned disciplinary proceedings in New Jersey, two disciplinary proceedings in this Court, and litigation in multiple jurisdictions and venues, both state and federal.

Procedural History in the Second Department

Initially, by decision and order on motion dated November 23, 2010, this Court authorized the Grievance Committee for the Ninth Judicial District to institute and prosecute a disciplinary proceeding against the respondent based on a verified petition dated August 9, 2010, containing seven charges of professional misconduct regarding the core controversy in this matter, and referred the issues raised to the Honorable William A. Wetzel, as Special Referee, to hear and report. By the same order, this Court denied that branch of the Grievance Committee's motion which sought the respondent's immediate suspension. Thereafter, the Grievance Committee filed motions: (1) for the respondent's immediate suspension (second request); (2) for leave to serve and file a supplemental petition dated January 31, 2011, and a second supplemental petition dated June 10, 2011; and (3) to collaterally estop the respondent from relitigating facts forming the basis of charge two in a proposed second supplemental petition. By decision and order on motion of this Court dated December 22, 2011, those

motions were denied, and the parties were directed to proceed with the disciplinary proceeding previously authorized.

Meanwhile, a disciplinary proceeding was commenced in New Jersey concerning the same controversy. As a consequence, at the request of the respondent, by decision and order on motion dated April 4, 2012, this Court stayed the disciplinary proceeding commenced in this Court pending the outcome of the parallel disciplinary proceeding in New Jersey. The New Jersey disciplinary proceeding concluded with the order dated May 21, 2013, disbarring the respondent for, inter alia, knowing misappropriation of client funds. Whereupon, the Grievance Committee moved, pursuant to former 22 NYCRR 691.3, to impose reciprocal discipline upon the respondent based on the disciplinary action taken against him by the Supreme Court of New Jersey, and the respondent made a demand for a hearing, asserting all three defenses enumerated in former 22 NYCRR 691.3. The Grievance Committee also moved to continue the stay of the disciplinary proceeding authorized by the decision and order on motion of this Court dated November 23, 2010, pending determination of its application to impose reciprocal discipline.

By decision and order on motion dated January 6, 2014, on the Court's own motion, this Court held in abeyance the Grievance Committee's application to impose reciprocal discipline, and its motion to stay the disciplinary proceeding, pending the outcome of an action entitled *Peng v Feng Li*, pending in the United States District Court, District of New Jersey, under case No. 13-5991, as it appeared that issues to be decided in the federal action might impact on the core controversy between the parties.

Upon termination of the proceedings in federal court, which were concluded adversely to the respondent, by decision and order on motion dated June 2, 2015, this Court, inter alia, vacated so much of the prior order as held in abeyance the application to impose reciprocal discipline and directed that a hearing pursuant to former 22 NYCRR 691.3 be conducted before the Honorable William A. Wetzel, as Special Referee, to hear and report, with respect to the findings of the Supreme Court of New Jersey and the respondent's proffered defenses to the imposition of reciprocal discipline.

In advance of the hearing, the respondent filed two motions, both of which were denied. By decision and order on motion dated September 22, 2015, this Court denied the respondent's

motion for a predetermination of two issues of law regarding the New Jersey order of discipline. By decision and order on motion dated December 7, 2015, this Court denied the respondent's motion, in effect, to dismiss the reciprocal disciplinary proceeding as jurisdictionally defective.

Summary of Basic Underlying Facts

In 1990, Alfred T. C. Peng, Tzu Li Hsu, Joseph Huang, Stephen Huang, Pen Fa Lee and Veronica Wan, as administrator of the estate of Chee C. Wan (hereinafter collectively clients), victims of a fraudulent investment scheme, commenced an action against Dr. Fabian A. Sy, FAS Development Co., Inc., and 225 Associates, in the Supreme Court, Queens County, for an accounting and to recover damages for fraud and breach of fiduciary duty. The lawsuit languished for 15 years without progress. In 2005, the clients were referred to the respondent. Although only recently admitted to the bar, the respondent agreed to represent them.

The respondent executed a retainer agreement on or about September 27, 2005, which provided that his fee would be based on a percentage of the net recovery: "$33^{1/3}$% on the first $500,000 recovered; 30% on the next $50,000 [sic] net recovered; 25% on the next $500,000 net recovered; and 20% on the next $500,000 recovered." Net recovery was defined as the total recovered on each client's behalf, minus costs and expenses and minus any prejudgment interest. Unbeknownst to the respondent, the retainer agreement used by him, which he downloaded off the Internet, was intended for use in New Jersey, and only in personal injury actions, not a commercial business action.

The action proceeded to a nonjury trial, which lasted from September 17, 2007 through October 22, 2007. In 2008, the respondent successfully obtained a substantial judgment in favor of his clients. The defendants appealed the judgment, depositing funds with the Commissioner of Finance of the City of New York to secure the appeal. The judgment was affirmed on appeal, and on July 23, 2009, the trial court entered an order allowing the respondent to take possession of the funds on deposit. The respondent received a check dated August 14, 2009, made payable to him as attorney for his clients, in the amount of $3,548,506.91 (hereinafter Sy judgment) and deposited the same into his trust account.

Prior to obtaining the check, on August 1, 2009, the respondent met with the clients to discuss expenses and how the

funds would be distributed. There was a disagreement between the respondent and the clients as to the amounts to be disbursed to each client, specifically with respect to the amount of the respondent's legal fees. The respondent took the position that his fees should be calculated based on the New York contingency fee rules, which included prejudgment interest, and that reference to the New Jersey rule in the retainer agreement was a mistake. Under the New York rule, the respondent would be entitled to approximately $1.1 million in fees (approximately one-third of the recovery), whereas, pursuant to the retainer agreement, the respondent's fees would be approximately $325,000 (8% of the recovery). No agreement was reached.

The Sy judgment cleared the respondent's trust account on or about August 17, 2009. The respondent had also received an additional $516,000 on behalf of the clients prior to that time. The $516,000, referred to as the Rabine funds, represented sale proceeds rightfully belonging to the clients, which were being held in trust by Sy's attorney, Joel Rabine. Through the respondent's efforts in filing a turnover motion, the Rabine funds were released. Thus, the total amount of funds entrusted to the respondent was approximately $4 million. With regard to the Rabine funds, the respondent and his clients also disagreed as to whether they should be included in the recovery for purposes of calculating the respondent's legal fees, the respondent taking the position that they should be included and his clients taking the position that those funds should not be included, because the Rabine funds were not the product of the litigation against Fabian Sy.

On or about August 18, 2009, the respondent disbursed from his attorney trust account approximately $525,034.85, representing his legal fees. In addition, on or about August 27, 2009, he disbursed from his attorney trust account approximately $734,908, representing the balance of his legal fees. These funds were deposited in various bank accounts maintained in the respondent's wife's name, of which two were for the benefit of the parties' two minor children under the New Jersey Uniform Transfers to Minors Act. On or about September 8, 2009, the respondent distributed to each of the clients their share of the award, calculated according to the New York rule, which amounted to approximately $2.8 million.

On or about September 11, 2009, the clients commenced an action against the respondent in the Superior Court of New

Jersey, Middlesex County, seeking a declaratory judgment determining the amount of legal fees owed to the respondent. The clients moved for and obtained a temporary restraining order prohibiting the respondent from dissipating the funds. The respondent informed the Superior Court that he had already used the disputed funds to pay various debts owed to creditors in China. Although directed by the Superior Court to return the funds and to render an accounting, the respondent did not comply with the order.

On or about October 5, 2009, the respondent filed an order to show cause in the Supreme Court, Westchester County, to enjoin the clients from litigating the New Jersey action. After a hearing, on December 30, 2009, the motion was denied (*Feng Li v Peng*, 2010 NY Slip Op 61727[U]).

On or about January 26, 2010, the respondent filed a bankruptcy petition with the United States Bankruptcy Court in the District of New Jersey, naming his clients as creditors (case No. 10-12109). The clients thereafter filed an adversary complaint seeking a judgment denying the discharge of the debt that they claimed was owed to them (case No. 11-01068).

New Jersey Disciplinary Proceedings

The respondent was admitted to the New Jersey Bar in 2004.

On January 24, 2011, the New Jersey Office of Attorney Ethics (hereinafter OAE) filed a four-count complaint charging the respondent with: (1) the knowing misappropriation of client funds by failing to disburse funds consistent with the written fee agreement, failing to segregate disputed funds, and failing to provide an accounting of disbursed funds (count one), in violation of New Jersey Rules of Professional Conduct (hereinafter RPC) rules 1.15 (a), (b) and (c), and 8.4 (c); (2) the knowing misappropriation of client funds by disbursing to himself the Rabine funds, which had been entrusted to him (count two), in violation of RPC rules 1.15 (a) and 8.4 (c); (3) making misrepresentations on the respondent's bankruptcy petition and failing to comply with a court order directing the respondent to return the monies disbursed (count three), in violation of RPC rule 8.4 (c) and (d) and RPC rule 3.4 (a) and (c); and (4) failing to comply with recordkeeping rules (count four), in violation of RPC rule 1.15 (d) and New Jersey Rules of Court rule 1:21-6.

1. Hearing before the Special Master

A hearing was held before Special Master Bernard A. Kuttner, on May 10, 11, 14 and 17, 2012, at which the respondent

appeared with counsel. Both the respondent and his clients testified at the hearing. The OAE and the respondent each submitted numerous exhibits. Upon the conclusion of the hearing, the Special Master issued a 23-page "Hearing Report Recommending Disbarment." Among his findings were the following:

> "Feng Li was an inexperienced young attorney who had never tried a case, nor taken a deposition. . . . This young attorney with a room in a New Jersey office mistakenly, due to various factors, utilized a New Jersey Retainer form for a New York case. The retainer called for a graduated fee scale and excluded interest pursuant to Rule 4:42-11 (b) even though there is no Rule in New York to that effect. The testimony makes it clear that the clients/ doctors, grievants all thought they were going to pay ⅓ of any recovery as a fee which had been their agreement with the New York Law firm which left the case dormant for 15 years. Once the 3.4 million dollar Judgment was awarded, the doctors (those who had access to the Retainer, since some may not have even signed it), read or reread the Retainer and decided to benefit by the mistaken graduated scale and preclusion of lawyers fee on the interest awarded. . . .

> "When the parties could not agree on the fees, they met on August 1, 2009 in Respondent's New Jersey office to discuss distribution of the proceeds. Five days later, as well as at the meeting, clients expressed disagreement with the proposed division. . . . There was also a dispute whether respondent could/should include the 1992 sale of a commercial property in his fee calculation which was not part of the grievant's damages in the suit.

> "[On August 17, 2009, the respondent deposited $3,548,506.91 into his Trust Account] . . . On August 26, 2009, Respondent issued his attorney Trust Account Check payable to his daughter, Christine Li in the amount of $352,009.00 and his son Vincent Li in the sum of $382,903.00. Respondent improperly distributed the money and never received client agreement, despite knowledge that his clients disagreed with the proposed distribu-

tion. In the New York Supreme Court litigation, Judge Alan B. Weiss ordered on April 16, 2008 that funds being held by a New York law firm in escrow from a 1992 sale of a Flushing property be turned over to the Respondent. That property had been owned by a partnership including Alfred Pen, Joseph and Stephen Huang, and Pen Fu Lee. In May 2008, Respondent opened a Trust account XXX6242 with his wife (a nonattorney) having signatory authority and on May 5, 2008 deposited $516,854.40 into his Sovereign Bank Trust Account, 3 days later he withdrew $516,854.40 and deposited them into an interest bearing Trust Account XXX0578. On August 17, 2009, he withdrew $525,034.85 and deposited the funds back into Sovereign Bank Trust Account XXX6242. On the same day he issued two checks from his trust account to his son Vincent $242,575.00 and daughter, Christine $282,459.85. There was no agreement with the clients and this distribution, to his children, I find constitutes misappropriation.

"After the fee/distribution dispute the clients retained Willard Shih, Esq. who filed a civil suit against Respondent. On October 15, 2009, Judge Travis Francis, AJSC in Middlesex ordered Respondent to retain and return all monies obtained from the judgment and provide counsel and the court with an accounting. The order was not complied with. On January 26, 2010 Respondent filed a Chapter 7 Bankruptcy. . . .

"On September 11, 2009, Willard Shih, Esq. of the Wilentz Firm filed a Complaint and Order to Show Cause against Respondent herein. The Complaint and Order to Show Cause was faxed to Respondent on September 15, 2009 at 3:33 p.m. Mr. Shih then called Respondent by phone and tried to resolve the dispute and reiterated that the funds should not be touched. Respondent admitted receiving the fax and filed a Certification dated September 17, 2009 in opposition. In spite of the Complaint, and Order to Show Cause, Respondent who received the papers by fax, nevertheless transferred monies, in dispute, to his children's accounts. Respondent knew since the August 1, 2009 meeting, letters and

faxed Order to Show Cause that the clients disputed his proposed fee, yet he transferred the money to his children's account. Ultimately, his wife wired it to China."

The Special Master concluded as follows:

"I find there has been proof and clear and convincing evidence that Respondent knowing there was a dispute regarding the quantum of his fee, improperly transferred funds held in trust for the clients to his children. . . .

"Respondent knowingly misappropriated the $516,854.40 which had been held by the Rabine & Nicklesberg law firm and which had been on April 16, 2008 ordered to be turned over to the Respondent. Those funds came from the 1992 sale of commercial property in Flushing. The funds were taken from his trust account and turned over to his children without the clients' knowledge or consent. I find that a knowing misappropriation in violation of RPC 1.15 and RPC 8.4 (c). . . .

"While one can empathize with a young attorney, who is so inexperienced he uses the wrong Retainer from the wrong State, and then after reviving a case which was dormant for 15 years finds his client[s] anxious to get the benefit of the mistaken bargain he made, he knew there was a dispute over the proper fees, he transferred money from his Trust account to his children and he knew there was a pending Order to Show Cause when the money was wired to China."

### 2. Majority Decision of the Disciplinary Review Board

The DRB conducted a de novo review and was satisfied that the Special Master's finding that the respondent's conduct was unethical was fully supported by clear and convincing evidence. The DRB split, however, as to the appropriate sanction. In a 49-page decision, the majority (four members) recommended that the respondent be disbarred. In a separate 11-page dissent, three members recommended a suspension (one member voting for a three-month suspension and two members voting for a one-year suspension).

The majority concluded that

"the record clearly and convincingly demonstrates that respondent knowingly misappropriated his

clients' funds when he arranged to have approximately $1.2 million dollars deposited into bank accounts in his children's names and later used those funds to pay his personal debts. Although respondent claimed that the funds were due to him as legal fees for the Sy litigation, respondent failed to establish that he held a reasonable belief of entitlement to those funds. *In re Rogers*, 126 N.J. 345 (1991)."

On the subject of the retainer agreement, the majority took the position that the respondent was bound by the retainer agreement as written. The majority stated:

"In essence, respondent pretended that he had entered into a fee agreement completely different from the one that his clients had signed. He calculated his fees based on this non-existent fee agreement. His clients, however, had the right to require that he comply with the express provisions of the agreement that he had prepared. If he believed that the agreement did not accurately reflect the parties' intent, his remedy was to bring the dispute before an appropriate forum for resolution, not to engage in self-help. Indeed, the fee agreement itself provided that respondent could apply to the court for a fee award if the recovery exceeded $2 million. Simply put, we find that respondent's belief that he could take his fees in accordance with an imagined fee agreement was far from reasonable."

The majority further found that other factors lended support to the notion that the respondent lacked a good-faith belief that he was entitled to the fee he took: threats he made to the clients that he might seek additional fees for handling the appeal if they persisted in the dispute, or that he would report possible misrepresentations the clients made at trial regarding their losses; the respondent's methods of disbursing his fee, characterized by the majority as "devious and appalling" (depositing his fees into accounts over which he had no access, wiring the funds out of the country); and inclusion of the Rabine funds as part of the recovery, which was "patently unreasonable."

The majority acknowledged that a reasonable, good-faith belief of entitlement to funds will defeat a finding of knowing

misappropriation, even if that belief turns out to be erroneous. However, where not reasonable, as here, the majority found the respondent guilty of knowing misappropriation, as follows:

> "[W]e find that respondent's claim that he believed that he could enforce a fee agreement that was only a fantasy is neither reasonable nor credible. We, therefore, find him guilty of the knowing misappropriation of a portion of the Sy judgment and the Rabine funds."

The majority concluded that the respondent committed other violations as well: failure to safeguard funds; misrepresentations made on his bankruptcy petition (omission of the $1.2 million fee); permitting his nonattorney wife to sign his attorney trust account checks; failing to provide an accounting to his clients; and failing to comply with a court order directing an accounting.

3. Dissent

In a dissent, three members of the DRB agreed with the majority that under the circumstances, the respondent exercised "stupendously bad judgment" in disbursing the funds prior to resolution of the disputed fee issue. However, the dissenting members disagreed with the majority's conclusion that there was clear and convincing evidence that the respondent knowingly misappropriated client funds in violation of RPC rule 8.4 (c). The record, in the opinion of the dissenters, was "too equivocal" for the following reasons:

> "Respondent may have taken the money knowing some portion of it was not his. Then again, the evidence could equally support the conclusion that respondent reasonably believed that the money was his earned fee, and that his clients' fee dispute was contrived. All of respondent's questionable acts— while . . . wrong—could still have been done under a sincere belief that the money was his. While respondent should be sanctioned for his misconduct, knowing misappropriation has not been adequately proven and respondent should not be disbarred.

> "One fact sharply illustrates the problem with the proofs. In respondent's pending bankruptcy proceeding, it is possible the court will ultimately decide that respondent is entitled to every penny he took. How can we conclude that respondent

could not have reasonably believed the money was his when a court may yet rule that the money was his? Here, unlike other knowing misappropriation cases, no one can say with mathematical confidence that respondent must have known that at least some portion of the amount he took could not have been his and was undoubtedly [his] clients'."

The dissent elaborated further as to the equivocal nature of the facts:

"The facts are not nearly as clear as the issue. Suffice it to say that respondent, then a brand new and inexperienced attorney, was retained to take over a New York lawsuit that had been languishing for 15 years. As noted in the special master's panel report, the seven clients were seeking to recover money relating to real estate investments. Respondent mistakenly used a form for a New Jersey contingent fee agreement that included the sliding scale of fees for tort actions and that precluded a contingent fee based on prejudgment interest. Importantly, the written agreement did not accurately reflect the fee agreement reached with the clients. The special master found that, contrary to the written agreement, respondent and each of his clients 'all thought they were going to pay ⅓ of any recovery as a fee.'

"Respondent recovered for his clients the 'Rabine funds,' $516,854 that had been withheld for years in another attorney's trust account. After a bench trial, respondent also won for his clients a $3.5 million judgment. More than half the judgment was pre-judgment interest. Respondent successfully defended the judgment on appeal. With post-judgment interest, respondent had deposited in his trust account approximately $4.1 million that he had obtained for his clients.

"Some of respondent's clients then decided to dispute the calculation of the legal fees. The special master concluded that the fee dispute seemed disingenuous, raised only after the judgment was awarded when the clients 'decided to benefit by the mistaken graduated scale and preclusion of lawyer fees on the interest awarded.' Rather than abiding

by the understood fee of one-third of the total recovery, the clients decided they wanted to try to apply the sliding scale fee agreement and to exclude prejudgment interest and the Rabine Funds from the calculation of fees. Despite the dispute, respondent disbursed $1.2 million as his fees. . . .

"The evidence would support a conclusion that respondent believed that the funds he took were his. . . .

"As the special master found, all the parties intended that the fee would be one-third of the total recovery. The evidence would support a conclusion that the clients and respondent all understood that the written agreement did not govern. The bankruptcy court may yet agree."

The dissent concluded:

"Respondent flagrantly violated several RPCs. We cannot, however, simply conflate these other violations into proof that respondent must have known that the money he was taking was not his fees and instead belonged to his clients. It may yet be adjudged by a court that the money respondent took is all his (in which case, a disbarment for knowing misappropriation would be incongruous and indefensible in hindsight). Or it may be adjudged that some of the money is his clients'. . . . Quite simply, the evidence here is too ambiguous to find clearly and convincingly a knowing misappropriation."

In view of the mitigation in the case, one dissenting member voted for a three-month suspension, and two members voted for a one-year suspension.

4. New Jersey Order of Disbarment

By order dated May 21, 2013 (213 NJ 523, 65 A3d 254 [2013]), the Supreme Court of New Jersey, agreeing with the majority decision of the DRB, disbarred the respondent for violating RPC rule 1.5 (c) (failing to provide an accounting of disbursed funds), RPC rule 1.15 (a) (knowing misappropriation of client funds), RPC rule 1.15 (c) (failing to segregate disputed funds), RPC rule 1.15 (d) and New Jersey Rules of Court rule 1:21-6 (recordkeeping violations), RPC rule 8.4 (d) (conduct prejudicial to the administration of justice), and the principles

of *Matter of Wilson* (81 NJ 451, 409 A2d 1153 [1979]). Notably, the Supreme Court of New Jersey found no violation of RPC rule 8.4 (c) (conduct involving dishonesty, fraud, deceit or misrepresentation).

The Supreme Court of New Jersey, after conducting an independent review of the matter, found that

> "(1) the written fee agreement with respondent's clients did not authorize the $1.2 million fee respondent took, (2) respondent wrote to his clients suggesting that he would charge additional fees and potentially inform authorities about alleged misrepresentations at trial unless the clients abandoned their challenge to his fee, and (3) respondent deliberately deposited the unauthorized fee in his children's bank accounts and wired the funds for his personal use to China, where they could not be retrieved, after he had been sued" (*Matter of Feng Li*, 213 NJ 523, 523, 65 A3d 254, 254 [2013]).

The Supreme Court of New Jersey further determined that the "respondent lacked a reasonable, good-faith belief of entitlement to the disputed funds and that his use of the contested funds therefore constituted a knowing misappropriation of client funds for which disbarment is required" (213 NJ at 523, 65 A3d at 254).

Federal Court Proceedings: Outcome

A hearing was held on December 16, 2013, before Judge Michael B. Kaplan in the United States Bankruptcy Court, District of New Jersey, with respect to the respondent's bankruptcy petition and the respondents' clients' adversary complaint, which sought a denial of the discharge, particularly as to their debt (i.e., the disputed fees), which they claimed was owed to them. Specifically, two issues were before the Bankruptcy Court: (1) whether 11 USC § 727 (a) (4) barred the respondent from a discharge on the ground that he knowingly and fraudulently made a false oath; and (2) whether, pursuant to 11 USC § 523 (a) (4), the respondent is not entitled to a discharge because he committed embezzlement or larceny. On both issues, the Bankruptcy Court found against the respondent. The respondent appealed the Bankruptcy Court's decision and order to the United States District Court. In affirming the Bankruptcy Court's ruling, the District Court, inter alia, determined that the respondent's counterclaims, which sought

reformation of the written fee agreement, were properly dismissed (*Feng Li v Peng*, 516 BR 26 [Bankr D NJ 2014]).

## State Court Action: Outcome

In September 2014, the respondent commenced yet another action in the Supreme Court, Queens County, against his clients, seeking an adjudication of the fee dispute, particularly a judicial determination that he was entitled to a reformation of the written agreement based on mistake. This action was subsequently dismissed on the ground of collateral estoppel.

Meanwhile, on January 30, 2015, the Superior Court of New Jersey, Middlesex County, granted the clients summary judgment, and on February 12, 2015, entered a final judgment against the respondent in the amount of $1,040,421.46. This action was the initial state court action commenced by the clients in 2009 which sought a declaratory judgment determining the amount of legal fees owed to the respondent.

## Reciprocal Discipline Hearing

Upon conclusion of the federal proceedings, the reciprocal disciplinary proceeding, which had been stayed, commenced before Special Referee William A. Wetzel. Following hearings held on July 22, 2015 and September 28, 2015, the Special Referee concluded that the respondent failed to sustain his burden with respect to any of his defenses. The respondent now moves to disaffirm the report of the Special Referee, and the Grievance Committee cross-moves to confirm the report, and for the imposition of reciprocal discipline.

The respondent advances several arguments opposing the imposition of reciprocal discipline, namely, inter alia, that he did not misappropriate the Rabine funds because the Rabine funds were awarded as part of the Sy judgment, thus, making it part of the recovery in the case and subject to his fee of one-third; that the New Jersey disciplinary authorities acted without jurisdiction; and that it would be unjust for this Court to impose reciprocal discipline because he was simply carrying out the directives of the New York court to distribute the judgment proceeds.

Having reviewed the record of the New Jersey disciplinary proceedings, and the proceedings here, we agree with the Special Referee that the respondent has failed to sustain his burden with respect to his asserted defenses. There is clearly no merit to the respondent's notice and opportunity defense, as the record of the New Jersey disciplinary proceedings demon-

strates quite plainly that the respondent was afforded ample opportunity to defend himself. There is equally no merit to the respondent's jurisdictional defense, since it is undisputed that the respondent was admitted to the New Jersey Bar and New Jersey has the authority to discipline members of its bar, irrespective of New York's jurisdiction (*see* Rules of Professional Conduct [22 NYCRR 1200.0] rule 8.5).

As for the substantive issue of misappropriation, the evidence in this matter was conflicting, at least on some issues, as reflected in the sharply divided opinion of the New Jersey DRB. We find no infirmity of proof as to the finding that the respondent misappropriated the Rabine funds. The evidence supports the finding that the turnover of the Rabine funds represented merely a shift in custody of the funds and that the funds did not lose their separate nature as a result of the shift. With regard to the Sy judgment, the evidence was less clear. The respondent's contention that he was entitled to one-third of the recovery was not pure "fantasy," as the hearing before the Special Master revealed that the respondent and the clients all understood that his recovery would be one-third, and that the respondent's clients attempted to take advantage of the respondent's mistaken use of the wrong form. Ultimately, despite much litigation, the respondent never prevailed in his efforts to set aside the written retainer agreement. Thus, it cannot be said that there was an infirmity of proof that the respondent misappropriated the Rabine funds and a portion of the Sy judgment, as it has been conclusively determined that the written fee provision governs. The respondent's second defense, therefore, has not been established.

The respondent's third defense, that the imposition of reciprocal discipline would be unjust, must fail, too, because it is undisputed that the respondent acted improperly in disbursing the funds prior to resolution of the dispute over his legal fees, thus constituting a clear violation of rule 1.15 (b) (4) of the Rules of Professional Conduct (22 NYCRR 1200.0). Inexperienced, having just recently been admitted to the bar, the respondent mistakenly used the wrong retainer provision. Both he and his clients verbally agreed that his fee would be one-third of the recovery, and the parties operated under that understanding throughout the proceedings. Only after the respondent obtained a multi-million dollar judgment for his clients did the clients read (or reread) the retainer agreement. The clients then decided to capitalize on the respondent's

mistake and benefit from it by holding the respondent to the terms of the written agreement. The respondent, who genuinely believed that the fee dispute was contrived, however, made a second mistake. Prior to resolution of the disputed fee issue, the respondent withdrew his legal fees, calculating them in accordance with the parties' verbal understanding and ignoring the terms of the written retainer agreement. The respondent's claim of one-third was not pure "fantasy," as it was grounded on the verbal understanding he had with his clients. However, he made matters worse, compounding his second mistake, when he immediately used his fees to pay off debts he owed to creditors in China, thus putting the disputed funds out of reach of his clients and the courts.

In determining the appropriate sanction, we have taken the following mitigating factors into consideration: the respondent was an inexperienced attorney, who mistakenly used the wrong retainer provision; the parties understood throughout the proceedings that the respondent's recovery would be one-third of the recovery; and the clients, only after the recovery and upon being made aware of the written terms of the retainer agreement, decided to capitalize on the respondent's mistake and hold him to the terms of the written agreement. In addition, the respondent has no prior disciplinary history, and now concedes that the better course of conduct would have been for him to set aside the disputed funds, litigate the fee issue in court, and then disburse the funds. The following aggravating factors have also been considered: the respondent withdrew his legal fees prior to resolution of the disputed fee issue; the respondent put the funds out of the reach of the courts and his clients when he used the funds to pay debts he owed to creditors in China; and the respondent, to date, has not paid the 2015 judgment issued by the Superior Court of New Jersey.

We consider that the heart of the matter underlying this controversy is a genuine fee dispute, and not a "theft" of funds in the ordinary sense. Under the circumstances of this case, we find that a suspension from the practice of law for three years is warranted (see Matter of Shearer, 94 AD3d 128 [2012]).

Accordingly, the application of the Grievance Committee to impose reciprocal discipline is granted; the respondent's motion to disaffirm the report of the Special Referee is denied; the Grievance Committee's cross motion to confirm the report of the Special Referee is granted; the respondent is suspended from the practice of law for three years; and the disciplinary proceeding authorized by the decision and order on motion of

this Court dated November 23, 2010 is discontinued as duplicative.

Eng, P.J., Rivera, Dillon, Balkin and Chambers, JJ., concur.

Ordered that the petitioner's application to impose reciprocal discipline is granted; and it is further,

Ordered that the respondent's motion to disaffirm the report of the Special Referee is denied; and it is further,

Ordered that the petitioner's cross motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that pursuant to 22 NYCRR 1240.13, the respondent, Feng Li, is suspended from the practice of law for a period of three years, commencing April 21, 2017, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than October 21, 2019. In such application (*see* 22 NYCRR 691.11, 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension he (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred and suspended attorneys (*see* 22 NYCRR 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (a), and (4) otherwise properly conducted himself; and it is further,

Ordered that the respondent, Feng Li, shall promptly comply with the rules governing the conduct of disbarred or suspended attorneys (*see* 22 NYCRR 1240.15); and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until further order of the Court, the respondent, Feng Li, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Feng Li, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15 (f).