[65 NYS3d 200]

In the Matter of MITCHEL TARTER, an Attorney, Respondent. ATTORNEY GRIEVANCE COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 5, 2017

APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Attorney, Attorney Grievance Committee*, New York City (*Kevin P. Culley* of counsel), for petitioner.

*Mitchel Tarter*, respondent pro se.

### OPINION OF THE COURT

Per Curiam.

Respondent Mitchel Tarter was admitted to the practice of law in the State of New York by the Third Judicial Department on July 21, 2004. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

The Attorney Grievance Committee (Committee) now moves for an order, pursuant to former Rules of the Appellate Division, First Department (22 NYCRR) §§ 603.4 (a) and 605.15 (e) (2) and Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.8 (b) (1) confirming the Referee's and Hearing Panel's respective findings of liability on charges stemming from respondent's perpetration of a fraudulent scheme. The Committee also seeks the imposition of whatever sanctions this Court deems appropriate.

The material facts are not in dispute. Respondent induced distressed homeowners to pay him advance legal fees and subsequent monthly charges to engage in mass joinder litigation seeking to modify their mortgage obligations and assert claims against their lenders. He performed no meaningful work for those fees, which he failed to refund and improperly shared with nonattorney mortgage brokers who referred clients to him. In doing so, respondent relied on a college acquaintance who worked in the mortgage industry and who, in turn, knew

brokers who could refer potential clients to respondent. Respondent worked with this acquaintance knowing that he had been previously banned from working in the mortgage industry in the States of Washington and Maryland. Rather than depositing the advance fees into a trust account, as required by federal law and regulations, respondent deposited the fees into his operating account and then disbursed the funds to two sham entities which, in turn, paid the nonattorney brokers who referred the clients to him.

Respondent admittedly knew that mass joinder litigation was unlikely to succeed and was not viable. Nonetheless, in December 2012, he commenced a mass joinder action on behalf of 21 plaintiffs entitled *Kalie v Bank of Am. Corp.* (297 FRD 552 [SD NY 2013, No. 12 Civ 9192 (PAE)]) in the United States District Court for the Southern District of New York. That action was dismissed by the court in August 2013 based upon improper joinder of parties and inadequate pleadings. Although respondent was granted leave to amend the pleadings as to the plaintiff Kalie and to file separate claims on behalf of the other 20 plaintiffs, he failed to do so. Respondent also failed to refund to his clients advance fees totaling approximately $50,000, half of which he had disbursed to the nonattorney brokers who had referred the clients to him.

Between July 2012 and November 2013, respondent was retained by 29 distressed homeowners who were not named as plaintiffs in the *Kalie* action. These clients paid respondent a total of approximately $140,817.16, which he split with the nonattorney brokers who had referred the clients to him. Between 2012 and 2014, respondent repeatedly failed to respond to these clients' requests for information about the status of their matters and to the demands of many of these clients that their legal fees be refunded.

Based on these material facts, the Committee charged respondent with 11 violations of the Rules of Professional Conduct (22 NYCRR 1200.0), to wit, rules 1.3 (a) (failing to act with reasonable diligence and promptness in representing a client); 1.3 (b) (neglect); 1.3 (c) (intentionally failing to carry out a contract of employment entered into with a client for professional services); 1.4 (a) (4) (failure to promptly comply with a client's reasonable requests for information); 1.5 (d) (2) (charging and/or collecting a legal fee prohibited by law or rule of court); 1.16 (e) (failure to promptly refund an unearned legal fee); 5.4 (a) (sharing legal fees with a nonlawyer); 7.2 (a)

(compensating a nonlawyer to recommend or obtain employ-
ment by a client); 8.4 (b) (illegal conduct adversely reflecting
on the lawyer's honesty, trustworthiness or fitness as a lawyer);
8.4 (c) (conduct involving dishonesty, fraud, deceit or misrepre-
sentation); and 8.4 (h) (other conduct adversely reflecting on
fitness as a lawyer). In his answer and subsequent stipulation,
respondent admitted the material facts alleged by the Commit-
tee and all of the charges.

In March 2016, a sanction hearing was held before a Referee
in this matter. By report dated June 28, 2016, the Referee
sustained all of the charges based on respondent's admissions
and the evidence presented by the Committee and recom-
mended that he be suspended for three years. In doing so, the
Referee found that respondent's claims that he had refunded
some of the unearned fees were unsubstantiated.

On October 20, 2016, a Hearing Panel heard oral argument.
By report dated October 24, 2016, the Hearing Panel affirmed
the Referee's liability findings but recommended that respon-
dent be disbarred.*

During his testimony at the sanction hearing, respondent
freely admitted that he engaged in deceptive misconduct and
conceded that he allowed his law license to be used by nonat-
torney brokers with whom he improperly shared legal fees, all
of which were unearned. He further admitted that he was
aware that any action he commenced subsequently to the dis-
missal of the *Kalie* action would likewise have been dismissed
and that he lacked the experience to represent his clients
adequately.

Respondent further testified in mitigation that his miscon-
duct was fueled by his long-term struggle with alcohol and
drug addiction. He has been intermittently involved with
Alcoholics Anonymous (AA) since 2005 but has periodically
relapsed. He further averred that he was currently an active
member of AA and had been continuously sober since July
2014. Additionally, he has participated in the New Jersey
Lawyers Assistance Program since September 2014, complet-
ing its 14-week relapse prevention program. He has also
participated in the New York City Bar Association's Lawyer As-
sistance Program. The Committee has conceded that he cooper-

---

* The misconduct at issue also resulted in grievances filed against respon-
dent in New Jersey, where he is admitted to practice but has been suspended
since May 2013 (230 NJ 388, 167 A3d 1292 [2017]).

ated with its investigation, admitted his misconduct and expressed sincere remorse.

Although respondent has made significant efforts at mitigation in this case, they are outweighed by the aggravating circumstances presented in this matter. Respondent's misconduct was affirmative, ongoing, egregious, and detrimental to all 50 of his clients. He has admitted that he engaged in a fraudulent scheme by which he collected significant legal fees from those clients. Respondent continued to engage in his fraudulent scheme undeterred by his awareness, upon dismissal of the *Kalie* action, that commencement of any further actions would be unavailing to his clients. Furthermore, respondent schemed to split his legal fees with nonattorney brokers by depositing them in his operating account and then disbursing them to sham entities which, in turn, paid the nonattorney brokers. In pursuing his improper dealings with these brokers, respondent relied on an acquaintance whom he knew had been barred from the mortgage industry in two states. Moreover, respondent failed to answer his clients' requests for information on the status of their actions and to respond to their demands that he refund their legal fees.

Here, as in *Matter of Alejandro* (65 AD3d 63 [1st Dept 2009], *appeal dismissed* 13 NY3d 788 [2009], *lv denied* 13 NY3d 714 [2009]), a case involving the attorney's "repeated neglect of client matters, his failure to promptly return unearned retainers, and, most seriously, his consistent pattern of deliberately deceiving clients" (*id.* at 65), respondent's misconduct and pattern of repeated violations of the Rules of Professional Conduct, as well as the fact that respondent defrauded 50 clients, supports the Hearing Panel's recommendation of disbarment (*id.* at 66, citing *Matter of Comas*, 40 AD3d 168, 171 [1st Dept 2007] ["Given the sheer breadth and gravity of respondent's uncontradicted egregious, unethical conduct . . . we find that the sanction of disbarment is warranted"]).

Accordingly, the Committee's motion for an order confirming the Referee's and Hearing Panel's respective findings of liability should be granted, respondent is disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately.

TOM, J.P., SWEENY, GISCHE, KAHN and GESMER, JJ., concur.

Respondent is disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.