Matter of Schlissel (2019 NY Slip Op 01547)





Matter of Schlissel


2019 NY Slip Op 01547


Decided on March 5, 2019


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 5, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta, Presiding Justice, Judith J. Gische, Angela M. Mazzarelli,Troy K. Webber, Jeffery K. Oing, Justices.


&em;

[*1]In the Matter of Aileen M. Schlissel, (admitted as Aileen Merrill Schlissel), an attorney and counselor-at-law: Attorney Grievance Committee M-4991 for the First Judicial Department, Petitioner, Aileen M. Schlissel, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Aileen M. Schlissel, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on September 15, 1997.



Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Norma I. Lopez, of counsel), for petitioner.
Respondent pro se.



PER CURIAM


Respondent Aileen M. Schlissel was admitted to the practice of law in the State of New York by the First Judicial Department on September 15, 1997, under the name Aileen Merrill Schlissel. Respondent's last registered address was in California.
The Attorney Grievance Committee (AGC) now seeks an order, pursuant to Judiciary Law § 90(2) and the Rules for Attorney Disciplinary Matters (22 NYCRR) and 1240.13, reciprocally disciplining respondent based on discipline imposed by the Supreme Court of Nevada, and directing her to demonstrate why discipline should not be imposed for the underlying misconduct, or sanctioning her as this Court deems appropriate under the circumstances. Although properly served, respondent has not appeared in response to this motion.
By order filed September 11, 2017, the Supreme Court of Nevada suspended respondent for four years for, inter alia, lack of diligence in seven mortgage loan modification matters and failing to safeguard advance fees paid by clients for which the agreed upon services were never rendered. In November 2016, respondent, pro se, had entered into a conditional guilty plea with the Nevada State Bar in exchange for that agreed-upon sanction. In so doing, she admitted that she opened and operated two separate national law firms to assist clients with loan modifications and that she mailed advertisements concerning her law firms nationwide but failed to file those advertisements with the Nevada State Bar as required.
Respondent further admitted that she employed non attorney "recruiters" who were compensated based on the number of clients they were able to sign up for loan modification services, and that some of these recruiters told potential clients to stop making mortgage payments and use those funds to pay respondent's fees. These recruiters also made false promises regarding how long the modification process would take and what the client's monthly mortgage payment or interest rate would be at the end of the process. Also, some of the recruiters contacted clients before the clients ever reached out to either of respondent's law firms. In fact, some clients never spoke to an attorney throughout the entire loan modification process and only dealt with non attorney staff members.
Additionally, respondent confessed that under the terms of her fee agreements with clients, she was supposed to maintain client retainers in her trust account until those fees were earned in phases after work was completed, but that she did not comply with this condition and used these monies to meet payroll and overhead costs. At least four of the clients specifically referenced in respondent's conditional guilty plea never received the agreed upon loan modification services (three of whom never received refunds).[FN1] 4 Both of respondent's law firms went out of business in mid-2015.
Respondent admitted that her conduct violated Nevada Rules of Professional Conduct 1.3 (lack of reasonable diligence and promptness in representing a client), 1.4 (failure to adequately communicate with clients), 1.5 (prohibition against charging or collecting an unreasonable fee), 1.15 (failure to safeguard advance fees paid by clients in trust account until earned), 5.3 (failure to properly supervise non lawyer staff/assistants), 5.4 (failure to maintain professional [*2]independence from non lawyer staff/assistants), 5.5 (unauthorized practice of law [FN1] 5), 7.1 (false or misleading communications about attorney's services), 7.2 (failure to comply with attorney advertising requirements), 7.2(A) (failure to comply with attorney advertising filing requirements) and 8.4 (prohibiting violations of Nevada Rules of Professional Conduct).
On the issue of sanction, respondent admitted that her actions were "intentional" (as the term is defined in the ABA Standards for Imposing Lawyer Sanctions) and that her professional misconduct was aggravated by the fact that there were multiple offenses that formed a pattern, and the vulnerability of her victims. In this regard, respondent stipulated that she:
"intentionally created a business model which allowed non-lawyers to provide legal advice to clients, and encouraged the exaggeration of potential results through compensation based on the number of people they were able to get to sign retainers and pay a fee. Respondent failed to safekeep client funds although it was promised she would do so in the fee agreements. She also failed to oversee her staff and [contact] lawyers to make sure everyone was doing their job."
Respondent's conditional guilty plea also cited factors in mitigation, namely, the absence of a prior disciplinary record, personal and emotional problems, and a cooperative attitude toward the disciplinary proceeding.
As to the appropriate sanction itself, respondent agreed that she should be suspended from the practice of law for four years. She also agreed to pay $34,233.25 in restitution, to place an additional $20,000 in trust in the event additional clients came forward with valid restitution claims, and to pay the costs associated with the disciplinary proceeding.
Following a hearing at which both the State Bar and respondent presented evidence, a hearing panel of the Southern Nevada Disciplinary Board unanimously recommended that respondent's conditional guilty plea be accepted in full and that she be disciplined in accordance with the terms thereof.
In the September 11, 2017 order, the Supreme Court of Nevada approved the Disciplinary Board's recommendation in full and directed that respondent be disciplined in accordance with the terms of her guilty plea agreement (Matter of Schlissel, 401 P3d 1066 [Nev 2017]).
In a proceeding seeking reciprocal discipline pursuant to 22 NYCRR 1240.13, the respondent is precluded from raising any defenses except: (1) lack of notice or opportunity to be heard in the foreign jurisdiction constituting a deprivation of due process; (2) an infirmity of proof establishing the misconduct presented to the foreign jurisdiction; or (3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this State.
Since respondent has not submitted a response to this petition, she has not raised any of the aforementioned defenses.
In any event, a review of the record establishes that respondent was afforded due process and that sufficient evidence established her admitted misconduct. Moreover, the misconduct for which respondent was disciplined in Nevada would constitute misconduct in New York in violation of Rules of Professional Conduct (22 NYCRR 1200.0) 1.3, 1.4, 1.5, 1.15(c)(4), 5.3, 5.4, 5.5, and 8.4(a).
As no available defense under 22 NYCRR 1240.13 exists, the only issue for this Court to decide is the appropriate sanction to be imposed. As a general rule, in reciprocal discipliary matters, this Court gives significant weight to the sanction imposed by the jurisdiction in which the charges were brought (see Matter of Peters, 127 AD2d 103 [1st Dept 2015]; see also Matter of Cardillo, 123 AD3d 147 [1st Dept 2014]). Moreover, the four-year suspension imposed in [*3]Nevada is in general accord with this Court's precedent involving comparable misconduct, for which sanctions have ranged from suspensions of varying length to disbarment (see e.g. Matter of Tarter, 156 AD3d 157 [1st Dept 2017]; Matter of Zhang, 142 AD3d 268 [1st Dept 2016]; Matter of Dilmaghani, 78 AD3d 39 [1st Dept 2010] lv denied, 15 NY3d 714 [2010]).
Accordingly, the AGC's motion for reciprocal discipline should be granted to the extent of imposing reciprocal discipline pursuant to 22 NYCRR 1240.13, and respondent should be suspended from the practice of law in this State for a period of four years, and until further order of this Court.
All concur.
Order filed. [March 5, 2019]
Motion is granted to the extent of imposing reciprocal discipline pursuant to 22 NYCRR 1240.13, and respondent is suspended from the practice of law in the State of New York for a period of four years, effective April 5, 2019, and until further order of this Court.



Footnotes

Footnote 1:4One client received a trial modification under which the amount of her monthly payments actually increased and the payments upon which she defaulted on the advice of one of respondent's assistants were added to the end of her loan. Respondent agreed to make a partial refund of $1,000 to the client in return for which she had the client sign a release of all liability for work done on her case; however, the client never received a refund check.

Footnote 1:5The record is not clear as to whether respondent was found to have violated Nevada rule 5.5 by engaging in the unauthorized practice of law herself or by assisting others to do so, both of which are prohibited by this rule.